IN THE MATTER OF THE ESTATE OF SAMUEL SAWYER, deceased, upon exceptions to Final Report of JOHN A. NASH, as administrator.

Estates of decedents: ALLOWANCE OF COMPENSATION: EX PARTE ORDERS.  An interlocutory order of court fixing the allowance to an administrator and his attorney, based on an *ex parte* application, is not an adjudication which must be appealed from or set aside by direct proceeding, but the heirs may contest the same at the hearing on the final report.

Compensation to administrator.  An allowance to the administrator of $400 for settling an estate of $2,000 is, under the showing of services rendered, held excessive and is reduced to $150.

Attorney fees.  An administrator is not necessarily entitled to recover from an estate the reasonable value of the services of his counsel, but such sum as was reasonably necessary under the circumstances. In the instant case the allowance asked is held excessive.

**Appeal:** PARTIES. The attorneys for an administrator are not necessary parties to an appeal from an allowance to the administrator and for counsel fees paid by him.

*Appeal from Audubon District Court.*— HON O. D. WHEELER, Judge.

WEDNESDAY, JULY 13, 1904.

THE opinion states the case.— *Modified.*

*Jamison & Smyth,* for appellants.

*L. L. Delano,* for appellee.

WEAVER, J.— Samuel Sawyer died in Audubon county, Iowa, in 1896, leaving a will, which was filed for probate in said county, and contested by his wife and children, or by some of them. Pending this contest, Elwin Sawyer, claiming that Samuel Sawyer was a resident of Jones county, Iowa, at the time of his death, obtained an appointment in the latter county as temporary administrator of the estate. Later, and before the trial upon the probate of the will, said Elwin Sawyer obtained another appointment as temporary administrator in Audubon county. In April, 1897, the will was adjudged invalid and denied probate by the district court of Audubon county, and immediately thereafter Elwin Sawyer was appointed general administrator of the estate by the district court of Jones county. Soon after this appointment Elwin Sawyer made report of his trust as temporary administrator to the district court of Audubon county. The report was disapproved, and the court, ignoring the appointment in Jones county, appointed John A. Nash as general administrator. These conflicting claims of jurisdiction resulted in legal proceedings to determine which of the persons appointed general administrator was entitled to receive the assets and settle the estate. Nash brought an action upon the bond given by Elwin Sawyer as temporary

administrator, and recovered judgment for the amount of the assets received by him in that capacity. On appeal to this court the judgment was affirmed. *Nash v. Sawyer,* 114 Iowa, 742. In satisfaction of said judgment Sawyer paid to Nash $2,069.30. This sum constitutes the entire estate received and administered by the latter. On June 19, 1902, Nash filed his final report, charging himself with the $2,069.30 paid by Sawyer, and asking to be credited with miscellaneous bills paid $274.60, attorney's fees to John H. Mosier $450, and to L. L. Delano $430, and for his own services as administrator $400, leaving in his hands $514.70 for distribution among the heirs. The charges for attorney's fees and for the administrator were excepted to by the heirs and, the exceptions being overruled, this appeal has been taken.

I.  It is said in argument for the appellee that the amount to be paid to the administrator for services and attorney's fees had been fixed by a prior order of the court, and cannot be questioned upon the final accounting. The claim is based upon the following facts: On March 15, 1902, Mr. Nash made a showing to the court of his desire to render a final accounting preparatory to his discharge, and obtained an order directing the report to be made at the May, 1902, term. On June 19, 1902 (the May term still pending), the final report was filed, and on June 21, 1902, an order was entered setting the matter for hearing on July 2, 1902, directing notice to be given to parties in interest. At the same term at which the final report was to be made, and three days before the report was filed, the administrator made an *ex parte* application to the court to fix the compensation of himself and of his attorneys for services in the matter of said estate, and the court entered an order allowing the same in the sums for which credit is demanded in the report. It is this order upon which appellee relies.

We cannot admit that such order had the effect of an

1. ALLOWANCE OF COMPENSATION: ex parte orders.

adjudication which must be appealed from or set aside by
direct proceedings in order to escape its effect. In the first
place, the executor is an officer of the court itself, and the
matter of his compensation and expenses should be and is at
all times subject to the court's revision, until the final report
is approved and order of discharge entered. The form of
the order of allowance which is relied upon by the appellee
is not given in the abstracts, but whatever it may have been,
it was an allowance to the administrator, and not to the
attorneys. The attorneys were not creditors of the estate,
and their fees earned were a personal charge against the
administrator. See *Clark v. Sayre,* 122 Iowa, 591, and
authorities there cited. The case thus presented is not with-
in the rule governing the presentation and allowance of
claims by creditors of the estate. In *Clark v. Cress,* 20
Iowa, 50, this court held that action will lie upon an admin-
istrator's bond for moneys improperly paid out, notwith-
standing an interlocutory order of the probate court approv-
ing the expenditure. In *Dorris v. Miller,* 105 Iowa, 564, we
quoted approvingly from the *Clark Case* the proposition that,
" until in a proper manner the administrator is discharged
from further duties and responsibilities, a party interested
is not concluded by these settlements, made in his absence,
and without notice." The statute (Code, section 3398) pro-
vides that mistakes in settlements by administrators may be
corrected at any time before final settlement and discharge;
and in the *Dorris Case* we held this provision applicable to the
improper allowance of attorney's fees to an administrator.
After reference to the facts from which we concluded the
allowance should not have been made, we said: " We are
of the opinion that the settlement was not conclusive, and
that the court below was right in charging the defendant
with the amount paid his attorneys."

There is also a still more persuasive reason in the pres-
ent case for denying the allowance of attorney's fees the
conclusiveness of an adjudication. It is to be found in the

facts above stated in reference to the time and circumstances under which the order was procured. As we have seen, the administrator had informed the court at the March term that the estate was substantially all administered, and procured an order directing the final report to be made at the May term next following. Upon this action being taken, the parties interested in the estate could reasonably assume and expect that no further intermediate reports or *ex parte* settlements would be had, and that the only matter remaining for disposition was the final report, which the administrator had asked and obtained leave to make. The claims of the administrator for compensation for his own services and expenditures are, of all the credits demanded by him, peculiarly appropriate for consideration and review upon the final report. If an administrator, after announcing to the court his readiness to make a final report, of which the heirs whose interests he represents must be notified and given opportunity to make objections, may thereafter, and within three days of the filing of such report, obtain an *ex parte* allowance of all his personal credits which shall be conclusive upon the heirs as an adjudication from which escape can only be had by appeal or by direct attack for fraud or mistake, then the door is open for wrongs of the most oppressive character, and final accounting by executors and administrators has little or no significance as a measure of protection to the rights of heirs and other beneficiaries of the estates of deceased persons. We do not wish to be understood as finding or intimating that the administrator in this instance attempted to obtain an undue advantage by proceeding in the manner which we have described, but the practice, if held to be correct, would be so susceptible to abuse, and so destructive to the rights of the parties in interest to obtain any proper or effective revision of an administrator's account, that the court should decline to give it indorsement in the absence of clear statutory authority therefor. Considering the fact that the administrator had announced his purpose

to file his final report for the May term of court, and did in fact so file it, the presentation during the same term of his claim for these credits may well be treated as a mere incident to or part of the promised report, and subject to exception by the heirs to the same extent as if the entire accounting had been embodied in a single statement or schedule.

II.   We have gone over the record with care to ascertain so far as. possible the merits of the administrator's claims, and conclude without hesitation that the allowance of each of the three items named is excessive.

2. COMPENSA-
TION TO
ADMINIS-
TRATOR.

Referring first to the allowance of $400 to the administrator, we may note that his appointment was not made until the litigation over the will had been terminated and the estate had been reduced to money in hand by the temporary administrator, Sawyer, who had also settled all claims against the estate in Jones county, leaving unsettled only certain small claims in Audubon county.   The entire estate coming into the hands of Mr. Nash was received in a single sum of $2,069.30, out of which he paid the small claims above referred to, aggregating $274.60, without litigation or contest.   Aside from these acts, constituting an unusually simple and formal settlement of a small estate, the entire service of the administrator was such as he performed as plaintiff in the action brought by him upon the bond of Elwin Sawyer.   Though a lawyer himself, he employed two experienced and able attorneys to conduct the litigation in his behalf, and does not claim compensation for any professional labor on his own part.   Except the time necessarily spent in consulting with his counsel, which, under the circumstances, could not have been a large item, and attendance upon the court one day, or less, during the trial of the action upon the bond, the administrator, as a witness, is unable to give any definite or satisfactory explanation of the services for which he insists $400 is a moderate and reasonable compensation.   He gives no item-

ized statement or schedule of the things done by him, but speaks in general terms, saying the matter was in litigation for four years, and he did "everything that was necessary or could be done as administrator to comply with the orders of the court and secure the payment of these debts." He further says that he was much harassed by applications from the numerous small creditors (the aggregate of whose claims we have above stated) for information about prospects of payment, and that he visited the courthouse on several occasions to look after matters of the estate. But when we have given due consideration to all these things, it remains true that the charge made is so out of proportion to the responsibility assumed and labor necessarily performed that we may say as a matter of common knowledge and observation it ought not to be sustained. In every administration a bond must be given in proportion to the probable value of the estate; the assets must be taken possession of and cared for; claims against the estate must be examined into, and, when allowed, must be paid; and when creditors have been satisfied the remaining assets, if any, must be distributed to the parties entitled thereto. All this is in the usual and ordinary course of settlement of the estates of deceased persons, and for this the statute specifically provides a compensation, which in the present case will not exceed $75, or, if we accept appellee's own estimate, $89. Code, section 3415. Now, this statutory allowance is not intended as a mere bonus or retainer leaving the administrator at liberty to charge and collect the reasonable value of his services in addition thereto. It is the measure of compensation fixed by law. If anything farther is allowed, it is only for "necessary and extraordinary expenses and services," and upon good reasons clearly shown to the court. *Gloyd's Estate*, 93 Iowa, 303. Counsel seem to argue that in fixing the compensation something should be added because "Nash assumed a great risk when he accepted the position of administrator and undertook to prosecute a suit against Elwin Sawyer and his bondsmen."

It is true he assumed some risk, but so does every man who accepts a trust of this nature. It was not an "extraordinary" risk, and we are unable to see how it can serve as basis of a claim for extraordinary compensation. The most which can be said in support of this claim is that by reason of the litigation the final settlement was prolonged considerably beyond the time when the settlement of the estate would otherwise have been effected, and it is perhaps not an unreasonable proposition that in this respect the service may be considered extraordinary. See *Young's Estate,* 97 Iowa, 218. If, in consideration of this feature of the case, his entire allowance is fixed at $150 — which is about twice the statutory limit — we think the compensation will be ample.

Coming next to the charge made for attorney's fees, we are not in the least disposed to belittle the value of the professional services rendered to the administrator. The high 3. ATTORNEY'S standing of counsel as lawyers of ability and FEES. integrity is a sufficient guaranty that the interests of their client were well and faithfully guarded, and that the business committed to their hands was thoroughly performed. But assuming that counsel put into this work all the time claimed by them, and that it was reasonably worth the sum 'for which credit is claimed in the report, we must still inquire whether the administrator was justified in incurring such expense at the charge of the estate; that is, whether the expense was reasonably necessary under the circumstances. Stated in other words, the inquiry here is not so much what the services were actually worth as between counsel and the administrator who employed them, but how much of the expense thus incurred ought the administrator be allowed to charge over against the estate. In litigation between individuals in their own right a party may properly employ counsel at any agreed rate of compensation, and be held to pay accordingly. In such cases the ardor of contest and desire for victory often impel men to seek the help of counsel of the highest rank, and to require and obtain from

them service out of all proportion to the subject-matter of controversy. Such a client will not be heard to complain because the bill for counsel fees is too great, so long as it does not exceed the reasonable value of the services performed at his request, although they were unnecessary, or might have been as successfully performed by counsel of less eminence, whose labors do not command so liberal reward. But an administrator deals with a trust fund, and can indulge in no contest for the mere sake of contest, or for the empty honor of a victory which dissipates the fund as effectually as a defeat or surrender at the outset could have done. If he does thus transcend the duties of his appointment, he cannot be permitted to recover the expense so unnecessarily incurred from the estate in his hands. The estate with which the administrator had here to deal was less than $2,-100. Its recovery involved an ordinary action at law upon the bond of the temporary administrator. The facts were few, simple, and generally speaking, undisputed. The legal propositions involved in these facts were of some importance, and it was the duty of the administrator to have the same investigated, and properly presented for the consideration of the court. Had it been a matter of his own individual concern, and he had drawn upon New York or Boston or some other of the great cities for a lawyer of national prominence, whose services were worth more than the entire amount of the claim, it would be a matter solely between himself and his counsel; or if, instead of sending abroad, he had concluded that his true policy was to seek a " multitude of counselors," and he had retained the services of a large number of local lawyers, it would still have been an act to which no other person could properly object. But acting, as he did, in a representative capacity, he was bound to gauge his expenditure with reasonable reference to the amount involved, in order to preserve the trust fund as nearly unimpaired as possible. *Stearns v. Comstock,* 121 Iowa, 430. A hunter who is out for his own pleasure may use a siege

gun or a field battery in bringing down his game, but if he represents another, and is without special authority to indulge in these luxuries, he cannot reasonably hope to be reimbursed by his employer for all the ammunition thus expended. And this is the gist of the criticism which can be justly made of the administrator's charges for counsel fees. They are manifestly extravagant. He was a lawyer, and, if he had himself done all the professional work required, and were before the court demanding no less than $1,280 for collecting and disbursing $2,069.30, the excessiveness of the charge would be apparent from its mere statement, in the absence of clear and satisfactory showing to the contrary.

It will be conceded that he was not required to do the professional work himself, and could rightfully employ counsel; but he could not properly charge the estate any more for expenses thus incurred than he would be entitled to charge for the same extraordinary service if performed by himself. Admitting the importance of the litigation, and that the collection of the claim from Sawyer was pertinaciously resisted to its final conclusion in this court, there would still seem to be no good reason why two additional lawyers should be engaged, each to be paid what would ordinarily be considered a liberal fee for conducting an estate of that magnitude to final settlement, even through litigation, and a like amount be reserved for the administrator himself. We will not prolong the opinion by rehearsing the various items of service performed by counsel. The rights of the administrator were efficiently represented, and to the extent the service was reasonably necessary the expense should be returned to the administrator from the estate. We are united in the opinion that the allowance made by the court below is more than the estate should bear. We do not overlook the fact urged upon our attention that the compensation to counsel was in a measure contingent upon their success, and waiving the grave doubt whether an administrator has authority to stake the es-

tate which he represents upon an agreement of that kind, it is our judgment that the hazard assumed was not so great as to justify the allowance granted. We observe, too, that the allowance to each of the attorneys is made to cover expenses as well as services; but deducting all the expenses shown which have not been otherwise repaid, the compensation allowed is in each case considerably in excess of $400. It is our conclusion that the credit to the administrator for counsel fees to Mr. Mosier should be reduced from $450 to $250, and to Mr. Delano from $430 to $230, and that, as thus modified, the final report be approved.

Counsel, in this connection, quote the scriptural injunction, " Thou shalt not muzzle the mouth of the ox that treadeth out corn." We concede the force and authority of the command, but after due consideration we are disposed to the view that even Moses would not carry liberality to the ox to the point where nothing but the husk is left to the owner of the corn.

III. Objection is raised by appellee to the sufficiency of the notice of appeal. The notice was directed to John A. Nash, administrator of the estate of Samuel Sawyer, deceased; to Delano and Meredith, his attorneys; and to the clerk of the trial court; and was duly served upon each. It is claimed that, to give this court jurisdiction, notice should also have been served upon L. L. Delano and John H. Mosier. The point is not well taken. The parties named were in no proper sense parties to the record. They were creditors of Mr. Nash, not of the estate. The administrator was asking credit for the sum of $880, which he claimed to have paid to Mosier and Delano, and the question being tried was simply whether he should be given credit for such payment in his settlement with the court for the heirs. Whether the money had been rightfully paid as between the administrator and his counsel was not and could not be there considered or decided. The only parties to that hearing were the administrator and the

*4. APPEAL: parties.*

heirs, and the notice of appeal was a sufficient compliance with the statute.

It follows, therefore, from the conclusions we have announced, that with the modifications suggested reducing the credits claimed by the administrator for his own services to $150, for payment to Mosier to $250, and for payment to Delano to $230, the judgment of the district court be affirmed. The costs of the appeal will be taxed to the appellee.— MODIFIED and AFFIRMED.