IN RE ESTATE OF CYNTHIA METCALF, Deceased, and IN RE ESTATE OF A. R. LIVINGSTON, Deceased, THOMAS METCALF, Administrator of both estates, Appellant, v. GEORGE W. BALDWIN ET AL., heirs at law of CYNTHIA METCALF, Deceased, Appellees.

**Estates of Decedents:** DISTRIBUTION : DEBTS AND COSTS OF ADMINIS-
1 TRATION. A devisees interest in the estate ·is subject to the payment of testator's debts and the costs of administration; and where the testator willed all his property to the wife of his administrator, who died before distribution, the interest of the administrator therein was burdened with testator's debts and the costs of administration, the same as though his wife had lived until distribution had been made.

**Same:** RENTS AND PROFITS. Rents and profits of real estate, from the
2 date of the death of the owner, pass directly to his heirs or devisees of the land, or to the representative of the estate for the payment of debts.

**Administration:** SALE OF REAL ESTATE : SETTLEMENT OF INTERMEDI-
3 ATE ACCOUNTS : CONCLUSIVENESS. The fact that an administrator, in his individual capacity, joined in the conveyance of estate property as authorized by the court, and made reports showing his intention to retain from the proceeds an amount as his own and that such intermediate reports were approved, did not constitute an adjudication of his interest in the estate nor an estoppel binding upon the parties, as the order permitting him to join in the sale of the property to pay debts was unnecessary; and having brought into court the entire funds, thus subjecting them to the

jurisdiction of the court, his interest in the estate was a subject for adjustment in his final settlement and account.

**Settlement of Estates:** CORRECTION OF INTERLOCUTORY ORDERS. Interlocutory orders made during the settlement of an estate and without notice are subject to correction at any time before final settlement.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

WEDNESDAY, MARCH 10, 1909.

REHEARING DENIED FRIDAY, JULY 2, 1909.

APPEAL from certain orders of the district court sitting as a court of probate in the matter of the estates of A. R. Livingston and Cynthia Metcalf, each deceased. Thomas R. Metcalf, administrator of the two estates, appeals.—*Affirmed.*

*John J. Ney,* for appellant.

*Fairall, Swords & Zmunt,* for appellees.

DEEMER, J.—A. R. Livingston died testate June 15, 1906, without wife or issue. He devised all his property to his aunt, Cynthia Metcalf, subject to the payment of his debts. The devisee was duly appointed executrix of the will, and her appointment was approved, and letters issued to her accordingly. She also took possession of the real estate devised to her. She was appointed executrix August 2, 1906, and during the same month she died intestate without direct heirs, but leaving Thomas Metcalf, her husband, surviving. Thomas Metcalf, the husband, was then appointed administrator of both the Livingston and his wife's estates. Each had personal property at the time of death amounting to $50, and each owned parts of a

lot in the city of Iowa City. The Livingston real estate was incumbered by mortgage, and Livingston and Cynthia Metcalf were each also largely indebted when they died. Claims against each estate were filed and allowed, and after the death of Mrs. Metcalf the administrator commenced proceedings to sell the Livingston and the Metcalf real estate to pay debts. The court ordered the sale of the Livingston real estate subject to the mortgage thereon, and that after the payment of liens, incumbrances, debts, etc., and the one-third distributive share of Thomas Metcalf, and the debts and claims allowed in the Metcalf estate, and the costs of administration, that he hold the remainder for distribution among the heirs of Cynthia Metcalf, as their interests might appear. The administrator reported that he had sold the Livingston lot for $3,700, and the Metcalf real estate for the sum of $4,430. He also reported in the Livingston estate that he had made a contract with the purchaser to convey him two-thirds of the real estate, and that in his own right he would execute a deed for the remaining third upon payment to him of one-third of the purchase price, and he asked that he be authorized to retain or pay to himself the sum of $1,234.33, and to apply the remainder to the payment of debts and the costs of administering the Livingston estate. Approval of this report was made by the court on August 17, 1907. In the Metcalf estate the administrator reported a sale of the two-thirds of the real estate and of the one-third as in the Livingston estate. This report was also adopted and the sale approved by the court. Deeds of the one-third and of the two-thirds of the real estate in the respective estates were made to the purchasers. On September 7, 1907, one Baldwin, an heir of Cynthia Metcalf, filed objections to the report of the administrator claiming that he had not accounted for the personal property or rents of the real estate, and on September 11th the court determined the amount which should be charged to the administrator as

rents, fixing the amount as $600, and he was also charged with personal property amounting to $50 in each estate.

September 13, 1907, the administrator of the Metcalf estate filed a report stating:

That he had received $3,700 from the sale of the Livingston real estate, $300 from the rent thereof, and $50 for the personal property; and from the sale of the Metcalf real property $4,430, $300 from the rent money, and $50 for personal property; and that after deducting $2,710, one-third dower interest in the real estate, and the payment of all costs and expenses in both estates, subject to some claims for interest on delinquent taxes and other claims, he had on hand for distribution the sum of $461.58. In said report he asked for an order for the payment of the claims in both estates, and that he be protected in the payment of the same. To this report the said George W. Baldwin, heir as aforesaid, on September 14th filed objections 'to the allowance, or payment of any of the items or the claims stated in that report, demanded strict proof thereof,' and in addition to such objection he stated that as to the item of $2,710, or any part thereof, he denied that the same was a just claim or should be allowed. On September 17th the administrator filed in the Metcalf estate an amendment to his last report, stating therein: That the debts unpaid at the death of Livingston amounted to $2,436.81; that if the said sum be deducted from the $4,050 there would remain $1,613; that therefore the dower interest, $1,233.34, did not encroach upon the property required for the payment of those who were creditors of Livingston in his lifetime. Baldwin denied every allegation in the amended report. On September 21st the court made an order sustaining the objection to the $2,710 credit claimed as dower, and found that Thomas Metcalf was entitled to the sum of $305.53, dower in the property acquired by Cynthia Metcalf by devise. On October 1st the administrator was ordered to pay the debts which had been allowed. On November 18, 1907, the administrator filed final reports in both estates; they being but repetitions of former reports. In the Metcalf report he stated that he had reduced the $461.58 on hand at date of former report to $388.62. In said reports the administrator complained of

the ruling finding his dower interest in the Livingston real estate at $305.53, and asked that his dower and one-sixth interest in the property of both estates be allowed him. To this report objections were filed by the said Baldwin, as follows: 'That according to the last report the said administrator at date of September 21, 1907, and as modified by the court, there was in his hands for general distribution among the heirs of the said estate, including the said Thomas Metcalf's one-sixth share as husband, the amount of $1,389.39, that said report had not been changed, and there are no facts stated in the last report why the said order at the September term should be changed or modified, and asking that the administrator pay into the court the money in his hands.' There were other objections to this report which were sustained, but, as no mention is made of them in the abstract or the argument, we do not under the rules notice them. There was a hearing of the said reports and of the objections thereto, and on May 4, 1908, the following entry was made: 'And the court being now fully advised, the first objection to the final report in the Cynthia Metcalf estate is sustained, but not as to the amount named in said objection, and the court finds that the administrator's report in reference to the amount of distribution is not correct, and that the correct amount is $1,165.43, of which amount the said Thomas Metcalf, as the husband of Cynthia Metcalf, deceased, is entitled to $194.24, leaving $971.19 for general distribution to the objectors'—which sum the court ordered to be paid to the clerk of the district court for distribution. The court disapproved so much of the final report in each of said estates as attempted to fix the amount of the dower interest of the said Thomas Metcalf in the estate of Cynthia Metcalf, deceased, so far as he asks that the ruling of this court in reference to the dower interest of said Metcalf as made September 21, 1907, be set aside.

The debts against the Livingston estate amounted to $3,008.41, and the real estate brought the sum of $3,700. The debts against the Metcalf estate were approximately $2,723, and the real estate sold for $4,430. The total available assets of the two estates, including personal prop-

erty, rents, etc., was $8,830, and the total indebtedness of
the two estates was $5,731.38. By the final order of the
district court, Thomas Metcalf was allowed the sum of
$1,476.66 as his distributive share of his wife's estate, and
also the sum of $305.53 as his share of the Livingston
estate.

No complaint is made of the allowance to Thomas
Metcalf from the Cynthia Metcalf estate being one-third
as surviving spouse and one-sixth as an heir, but appel-
lant strenuously insists that there was er-
ror in his allowance from the Livingston
estate. He claims that he took one-third in
value of the Livingston estate as survivor
of his wife, and that he should have been allowed on that
account the sum of $1,233.34, instead of $305.53. This
contention involves primarily the nature of the interest
which Metcalf, as surviving spouse, had in the estate of
Livingston, which passed by devise to his wife, Cynthia
Metcalf. It is true that she took the same by will, and
that this estate vested upon the death of the testator; but
this vesting was clearly subject to the payment of the debts
of the deceased and of the proper costs of administration.
She did not take the same free from Livingston's debts, and
his creditors, notwithstanding the devise, had the right to
resort to both the personal and the real estate for the
payment of their debts. These were not paid at the time
of her death, but this is immaterial for the reason that the
estate of Cynthia Metcalf was entitled to no more from
the Livingston estate than she would have been entitled to
receive had she survived. Thomas Metcalf's distributive
share in his wife's estate was burdened with the payment
of Livingston's debts and the cost of administering his
estate. These are fundamental propositions which do not
need the citation of authorities in their support. From the
record it appears that the total assets of the Livingston
estate, including personal property, rents, etc., were $4,050,

1. ESTATES OF
DECEDENTS:
distribution:
debts and costs
of administra-
tion.

and that the debts against it which could have been collected even out of the real estate were $3,008.41, leaving an actual balance of $1,041.59 after the payment of debts, which Cynthia Metcalf would have received had she survived.

The claim that distributive share or dower is superior to debts of the deceased spouse is not involved here. The question is: What did Cynthia Metcalf get from the Livingston estate, or what would she have received had she survived? Manifestly, whatever was left after the payment of his debts and the costs of administration. When that amount is determined, we then have a basis whereby to determine the question as to what share of the property coming from the Livingston estate Metcalf is entitled to. This Metcalf property was not sold to pay Livingston's debts, but Livingston's property which he had devised to Mrs. Metcalf was sold to pay his (Livingston's) debts, leaving the remainder to pass by the devise. Thomas Metcalf had no right to any part of Livingston's estate. Whatever he received from that source came through his wife as a devisee, and she took the property burdened with his debts, funeral expenses, and proper costs of administration. For this no citation of authorities should be required. Appellant asserts that he is entitled to a full one-third of the proceeds of the real estate belonging to both estates without reference to debts, which amounts to $2,710, while appellee contends that he is entitled to nothing in the Livingston estate until the debts are paid, and that the extent of his interest therein is $305.53. Appellee admits that Metcalf is entitled to $1,476.66 from his wife's estate, and that in all he should not have to exceed $1,782.19.

Metcalf was not entitled to any part of the rents of the real estate arising after the death of either Livingston or Mrs. Metcalf. These were matters arising after the death of the parties owning the land, and went directly either to the heirs or devisees,

2. SAME: rents and profits.

or passed to the administrator or executor for the payment
of debts.  By the final order of the court, Metcalf was al-
lowed something like $16 more than he was entitled to,
but of this he can not complain.

But appellant contends that the trial court in previous
orders recognized Metcalf's right to a full one-third of the
value of the real estate of which both Livingston and his

wife died seised, that he joined in convey-

3. ADMINISTRA-
TION: sale of
real estate:
settlement of
intermediate
accounts:
conclusiveness.

ances on that basis, and that this constituted
both an adjudication and an estoppel binding
on all parties.  It is true that he (Metcalf)
did join in the conveyances as authorized by
the court, and that he made reports showing sales and his
intention to retain one-third of the purchase price of each
property as his own, and that these reports were at one
time approved; but it also appears that both then and in
subsequent reports he attempted to account for the entire
purchase price of each property and made a final report
bringing the entire matter before the court of review.  In
an order made September 21, 1907, the court expressly
found that Metcalf was entitled to no more than $305.53
as his distributive share of the Livingston estate; but in his
final report he challenged this order, asked that it be set
aside, and that he be paid the sum of $1,233.34.  In this
final report he also claimed that he had on hand after
taking his distributive share something like $388.62, and
he asked that he be allowed the full one-third of the selling
price of the Livingston property, without regard to the
debts.  The trial court refused to set aside the order of
September 27th, and ordered the administrator to pay back
to the estate the sum of $971.19.  The order permitting
Metcalf to join in the administrator's deed of the real estate
was unnecessary.  *Garvin v. Hatcher,* 39 Iowa, 685; *Olm-
sted v. Blair,* 45 Iowa, 42; *Wild v. Toms,* 123 Iowa, 747.
But, however this may be, the administrator brought the
entire funds into court and subjected them to the jurisdic-

tion thereof, and these matters necessarily remained open for adjustment and settlement until the final accounting was had. The orders with reference to Metcalf's joining in the deeds were not conclusive as to his interest in either property, and he brought all the funds into court· for proper orders. Even if mistakes were made in interlocutory orders, they were subject to corrections at any and all times before the estates were finally closed.

At one time the trial judge, sitting as a court of probate, found that Metcalf was entitled to the sum of $1,234.-33, and his share of the Livingston estate; but this was an error which was afterwards corrected by a court having full jurisdiction of the entire matter. The allowance of the $1,234.33 was without notice to the heirs, was an interlocutory one, and according to well-settled rules was subject to correction at any time before final settlement. We do not think the matter has been adjudicated in such a way as to prevent the court on a hearing of the final report from making the proper orders. Some mistakes were made by the trial court in its figures; but, as they were in favor of appellant and are small in amount, we do not attempt to straighten them out.

4. Settlement of estates: correction of interlocutory orders.

No error appears, and the orders must be, and they are, each and all *affirmed.*