IN RE ESTATE OF CHARLES M. METCALF.

CARRIE PHILLIPS et al., and REILLA DOUDY, Guardian, Appellants, v. WALTER P. METCALF, Executor, et al., Appellees.

No. 44927.

January 16, 1940.

William A. Shuminsky, Robert J. O'Connor, and Lester C. Davidson, for appellants.

A. H. Bolton, for appellees.

HAMILTON, C. J.—The entire estate, as shown by the final report, amounted to $19,638.22 of which amount $16,800 was proceeds from the sale of a farm which sale was made by a real estate broker for which said broker was paid $800 commission. The will, together with the affidavit of death of testator, Charles M. Metcalf, was filed for probate June 1, 1936. On June 11, 1936, certain heirs filed objections to the probate of said purported will. A hearing was had commencing January 20, 1937, and concluding January 23, 1937, resulting in a directed verdict for proponents. Contestants served notice of appeal but did nothing further and, on motion, the appeal was dismissed. On November 8, 1937, the executor made application to sell the real estate. Certain heirs filed resistance and, on December 23, 1937, there was a hearing on this matter resulting in an order granting the application. On November 8, 1937, executor filed an application for an order authorizing suit on a $1,500 promissory note which was listed in the executor's inventory as worthless and appraised as worthless which application was granted and said note was accordingly placed in judgment. On May 9, 1938, the executor filed a report and request for instructions as to his duties in distributing the estate which order was granted on May 27, 1938. On June 10, 1938, executor filed application for order fixing fees for executor and attorney, setting up the fact that, in addition to the ordinary services rendered, it was necessary that both the executor and his attorney render extraordinary services in the settlement of said estate. These include the will contest and other probate pro-

ceedings to which we have already referred and, in addition, reference is made to the fact that executor was ordered to take charge of the real estate and that he had had the rental, supervision, repair and direct control of said real estate at all times subsequent to his appointment. Along with this application, the executor's attorney filed a ''Statement in relation to attorneys fees'' in which he undertook to set forth his services in connection with the administration of said estate. The alleged extraordinary services, for which he asks compensation, as set forth in this statement, consisted of the will contest and, in connection with this matter, he states:

''* * * approximately fifteen days time was involved in briefing, trial and preparation of trial in said matter. * * * and spent several days in connection with the appellate proceedings in reference to this matter.''

Reference is made to the application for the sale of real estate which was contested and that ''approximately five days time was spent in preparation of this hearing and in attending same, and in preparation of briefs.''

Some tax matters, involving unpaid taxes on the part of some of the heirs, and some back taxes, due from the estate, had to be cleared up ''and that attorney for executor spent several days clearing up title, procuring orders in reference to taxes, and in taking care of tax certificates * * *.''

Reference is also made to the placing of the aforesaid $1,500 note in judgment and also to the application for instructions made necessary because of the fact that the will contained a clause disinheriting any beneficiary joining in a contest of the will and to the fact that this was an adversary proceeding and that ''considerable time was required in briefing and presenting the matter to the court.''

There was also presented to the court the matter of a $300 disputed claim filed against the estate and an order procured disallowing the same; that in connection with all said matters, ''it was necessary that many consultations be had and many consultations were had requiring the expenditure of much time in preparing for the various litigated matters.''

Both the application of the executor and statement of the attorney were verified. On June 9, 1938, at an ex parte hearing, an order was made which recites ''and the court being

advised in the premises finds * * *'' that each of said parties have rendered extraordinary services; that the reasonable value of such services of the executor is $750 and of the attorney $3,500 and the same was so fixed and ordered paid. It isn't claimed that there was any hearing at which evidence was taken at the time these fees were fixed and, as will be observed from the quoted portions of the finding of the court, it does not appear of record that the court had the benefit of any evidence as to the services rendered or as to their value other than the verified application and statement and these do not purport to state anything as to the fair and reasonable value of the extraordinary services. It does appear of record that the presiding judge, who fixed the fees, did not preside at any of the hearings in which it is claimed extraordinary services were rendered and, hence, had no personal knowledge of the matters presented to him.

On July 14, 1938, about 5 weeks after this ex parte order was made, appellants, who are beneficiaries and residuary legatees under the will, made application by way of motion to vacate said ex parte order, stating, in substance, that the order allowing such fees was procured without notice to any of the complaining parties and without a hearing or opportunity to examine the executor with reference to the character and extent of the services performed and the reasonableness of the charges therefor; also:

"That in the application for order fixing fees, the executor has set out vague and indefinite statements as to the services rendered in the conduct of the affairs within estate, and has failed to set out what extraordinary services he performed for the benefit of the estate for which he procured an ex parte order allowing him $750; that the said executor has failed to itemize the services and allege the reasonable value of the same; that the court was misinformed as to the character, extent and value of both ordinary and extraordinary services performed by the executor at the time it entered the order allowing the executor the sum of $1,308.50 as fees; that all the services performed by the executor in the conduct of the affairs of this estate are not worth the sum of $558.50 allowed him for performing services of ordinary character.

"That there was filed with the 'Application for Order Fix-

ing Fees of Executors and Attorneys' a pleading entitled, 'Statement in relation to attorneys fees'; that said statement contains a list of ordinary services performed for the estate by A. H. Bolton and associates for the executor herein, and in addition contains a number of broad, indefinite and vague allegations which purport to set out the extraordinary services the executor's attorneys claim to have rendered said executor for the benefit of this estate; that said pleading contains various misstatements concerning the character of the services performed the time spent in performing them; that the court was misinformed as to the character, extent and value of the attorney's services at the time it entered the order allowing attorney's fees in the sum of $3,500 for extraordinary services; that said fee is an unreasonable and an exorbitant fee for the services actually rendered. * * *''

This motion was verified and was in no way attacked and no resistance of any kind filed thereto. On December 29, 1938, the motion was overruled. The order simply reciting that arguments were heard on the motion "and the court having listened to the opening statements of the respective counsel and having read the authorities cited by counsel for the resistors, and no further record herein being made, and the court being duly advised in the premises now makes the following ruling thereon: * * *'' Again, it will be observed the executor offered no evidence to sustain the allowances made for extraordinary services.

On February 14, 1939, the executor filed his final report in which he asked credit for the allowance of such extraordinary fees. To this report the appellants, in due time, made and filed objections in which exception is taken to such allowances on much the same grounds as those set out in the motion to vacate the ex parte order and contains this statement:

"* * * said allowance was fraudulently procured from this court by misrepresenting to the court the services executor claims to have rendered on behalf of said estate."

To these objections the executor filed a motion to strike on the ground that matters attempted to be raised by the objections to the final report of the executor were res judicata. This motion to strike was sustained on said alleged ground.

Appeal has been perfected from three specific orders: (1) Order entered June 9, 1938, fixing fees, (2) order entered De-

cember 29, 1938, overruling motion to vacate the ex parte order, and (3) order of April 13, 1939, sustaining motion to strike objections to final report. We are unable to agree with the trial court that the matters presented by the objections to the final report have been once adjudicated.

Appellees do not claim that there has ever been a hearing at which evidence was introduced furnishing a basis for the legal allowance of fees for extraordinary services. The contention of appellees is that, when this motion was presented, the appellants in open court waived everything presented by the motion except a legal question pertaining to the form and substance of the statement concerning these fees. We quote from appellees' argument:

"It is the contention of appellees that this matter should be presented in this court on the legal aspect of a motion attacking an order of the trial court submitted on a matter in the form of a motion by appellants and submitted on a bare legal proposition only in the trial court, and not presented in the manner provided by law with support of any kind except on a brief concerning the legality of the statement furnished the court and covering executor's fees and attorney's fees.

"This matter was not presented in the trial court as a petition carrying with it the rules in reference to petitions, but had it been so presented the limitation in open court by the moving parties to but one phase of said motion would have been similarly handled by the trial court had the matter been presented on petition. In other words, had the moving parties desired to present their motion fully, resistance would have been filed, but since they withdrew all matters from consideration of the trial court in open court, with the exception of the legality of the statement concerning fees, they had their day in court concerning all matters set out in the motion, and cannot complain that they are not given another day to thrash out the same matters they voluntarily submitted to the court and which they voluntarily restricted themselves from claiming advantage of by an open court proceeding and withdrawal."

The trouble with this contention is that the record does not sustain appellees. It has no other basis than an affidavit made by Judge Rice, after he had ceased to hold office, that such waiver was made in open court as claimed by appellees. This

affidavit of Judge Rice bears date of July 11, 1939, which is 3 months after this appeal was perfected. Manifestly, it is no part of the record and cannot be considered as such by this court. From the appellees' own statement in argument, which we have just quoted, it is disclosed that his claim of res judicata is hinged on this alleged waiver. Without this waiver the motion to vacate, which was sworn to, stands unassailed by any pleading. Without this waiver appellees' contention, that the matter presented to the trial court on the motion to set aside and vacate the ex parte order was confined to a single legal question only, falls for want of support. Throughout appellees' argument, he relies on this affidavit. In division II of appellees' brief, we find this statement:

"The motion to vacate was unsupported. It was presented to the court with a definite statement in open court that there was but one legal matter involved. In view of that fact it was not incumbent upon the executor to offer evidence. A question of law was all that was presented."

It would appear from the excerpts from appellees' argument that this so-called waiver is put forth as an excuse, or by way of explanation, for not filing a resistance to the motion to vacate and for not introducing any evidence to support the allowances for extraordinary services. Under the record before us, we are necessarily required to consider the matter without reference to the alleged waiver as the same is no part of the record.

■■ It is pointed out by appellants that the fees allowed the executor and his attorney total almost 28 per cent of the gross estate and more than one third of the net estate. In the motion to vacate, as well as in the objections to the final report, it is pointed out that (a) these allowances were secured without notice; (b) that legatees had no opportunity to examine the executor with reference to the services; (c) that services were not itemized; (d) that they were not worth the sum allowed for ordinary services; (e) that they contained misstatements concerning the character of services rendered; (f) that the court was misinformed as to the character, extent and value of the attorney's fees; (g) that the fees allowed were unreasonable and exorbitant; and (h) that said allowance was fraudulently

procured from the court by misrepresenting to the court the services executor claims to have rendered on behalf of said estate. The action of the trial court in striking these objections on the ground of res judicata had the effect of depriving the beneficiaries under the will of an opportunity to present their evidence to support the allegations of their objections. There can scarcely be any basis for the claim of res judicata as to any of the factual matters when the record is conclusive that there has never been a hearing at which evidence was introduced which would furnish a basis for any final adjudication as to the extent or value of the alleged extraordinary services. It requires but a glance at the statement of the attorney, heretofore set out in quotation marks, to apprise one that the same was too indefinite to furnish a proper legal basis for any such finding. The time spent in the court room is not separated from the time spent in the office briefing and in consultation. We are aware that there is a presumption supporting the regularity of the trial court's ruling in fixing these fees which is sufficient to support it when not assailed and it is not uncommon for attorneys to proceed to obtain ex parte orders fixing their fees without introducing evidence as to the value of such services, but they are always open to review on the final settlement. This is plainly provided by statute. Section 12049 of the 1935 Code of Iowa provides:

"Mistakes in settlements may be corrected in the probate court at any time before his final settlement and discharge. * * *"

And section 12050 provides:

"Any person interested in the estate may attend upon the settlement of his accounts and contest the same."

In In re Estate of Murphy, 209 Iowa 679, 684, 228 N. W. 658, 660, we said:

"To be entitled to compensation for what is termed 'extraordinary services,' the burden is upon the executor to prove the 'extraordinary services' and the reasonable value thereof."

In In re Estate of McClellan, 192 Iowa 384, 391, 183 N. W. 398, 401, 184 N. W. 749, the eminent Justice Evans, speaking for the court in discussing the then recently enacted statute,

994

known as the maximum fee statute, made the following statement:

"The statute impresses us as exceedingly liberal, if not excessive in its allowance, and we should be slow to enlarge it by judicial construction. Manifestly, the statutory rate provided for is sufficiently large to warrant the inclusion of laborious professional services, as distinguished from merely formal and clerical ones. It should be deemed to include services rendered in litigation, to some degree, and that a considerable one. So far as the formalities of keeping and stating accounts and formulating and presenting reports are concerned, the rate allowed to the administrator is sufficiently large to charge him with the burden of such service. Unless the attorney employed is to stand ready both to protect the estate against litigation and to engage in litigation, if unavoidable, then the statutory rate allowed for attorney fees becomes an approximate gratuity and an arbitrary charge upon the estate. This is not saying that the litigation of an estate might not become so burdensome that the statutory rate would not afford a just and reasonable compensation. In such event, and in such only, the court has power to award additional compensation. The burden in such case is upon the administrator, to show the reasonableness for additional compensation. Nor should the court lightly relieve him of that burden *by assuming, without a showing, to take judicial notice of the value of the services.*" (Italics ours.)

In In re Estate of Sawyer, 124 Iowa 485, 487, 100 N. W. 484, 485, Judge Weaver, another eminent justice, in discussing the effect of an ex parte order fixing fees of this character, said:

"We cannot admit that such order had the effect of an adjudication which must be appealed from or set aside by direct proceedings in order to escape its effect. In the first place, the executor is an officer of the court itself, and the matter of his compensation and expenses should be and is at all times subject to the court's revision, until the final report is approved and order of discharge entered. The form of the order of allowance which is relied upon by the appellee is not given in the abstracts, but whatever it may have been, it was an allowance to the administrator, and not to the attorneys. The attorneys were not creditors of the estate, and their fees earned were a

personal charge against the administrator. See Clark v. Sayre 122 Iowa 591 [98 N. W. 484, 485], and authorities there cited. The case thus presented is not within the rule governing the presentation and allowance of claims by creditors of the estate. In Clark v. Cress, 20 Iowa, 50, this court held that action will lie upon an administrator's bond for moneys improperly paid out, notwithstanding an interlocutory order of the probate court approving the expenditure. In Dorris v. Miller, 105 Iowa 564 [75 N. W. 482], we quoted approvingly from the Clark case the proposition that, 'until in a proper manner the administrator is discharged from further duties and responsibilities, a party interested is not concluded by these settlements, made in his absence, and without notice.' The statute (Code, section 3398) provides that mistakes in settlements by administrators may be corrected at any time before final settlement and discharge; and in the Dorris case we held this provision applicable to the improper allowance of attorney's fees to an administrator. * * * The claims of the administrator for compensation for his own services and expenditures are, of all the credits demanded by him, peculiarly appropriate for consideration and review upon the final report.''

We have very recently, in the case of In re Schropfer's Estate, Maher & Mullin v. Sayrs, 225 Iowa 576, 585, 281 N. W. 139, 144, in an opinion by Justice Richards, given voice to the same principle in the following language:

''An executor is an officer of the court subject to its orders until the estate is closed. The matter of his compensation and expenses is at all times subject to the court's revision. Likewise orders of allowance made to him for services of his attorneys, prior to the enactment of what is now section 12064, Code 1935, were subject to like revision. In re Estate of Sawyer, 124 Iowa 485, 100 N. W. 484. By reason of section 12064 the allowance is now made directly to the attorney rather than to the executor for his attorney. But in this procedural change there is no detraction from the powers of the court to revise allowances, in like manner as in the case cited. The situation respecting compensation of an attorney, appointed by the court, to represent an estate, has the same characteristics as formerly, and the same reasons obtain for holding that the court may revise an order made with respect to an attorney's compensation. Any other

theory of practice would be susceptible to abuse, and so destructive to the rights of parties in interest to obtain a proper revision of such an order, that the court should decline to give it indorsement in the absence of any compelling statutory provision contra."

Appellees appear to have had some theory in mind to the effect that the proper attack on the ex parte order would have been by petition and that, because the appellants made their application to the court in the form of a motion, the rules of law advanced by appellants and to which we have made reference herein are not applicable. There was no occasion for resorting to a petition during the time the estate remained in the process of administration. A motion, as defined by statute, is an application to the court. This motion was an application in probate and was a perfectly proper procedure. It was sworn to and even though there were no affidavits attached supporting the allegations of the motion, in the absence of any attack thereon or any resistance thereto, under the provisions of section 11201, 1935 Code, every material allegation therein would be taken as true. Whether this section is applicable to an application or a motion in a probate proceeding it is not necessary for us to determine, but see: Van Aken v. Welsh, 80 Iowa 114, 45 N. W. 406; and In re Estate of Douglas, 140 Iowa 603, 117 N. W. 982.

What we hold is that the ruling on the motion to vacate did not constitute res judicata and was not a bar to a review on objections to the final report of the executor's accounts and the question of the reasonableness of the charges made and for which credit was taken in the final report. It follows that the motion to strike should have been overruled. The efficacy of the ex parte order will have its bearing upon the hearing of the objections to the final report. In re Estate of Durey, 215 Iowa 257, 266, 245 N. W. 236, 240, this court, speaking through Justice Wagner, announced the rule as follows:

"The previous holdings of this court are to the effect that mistakes made during the settlement of an estate in interlocutory orders, without notice, are subject to correction at any time before the final settlement of the estate. See Metcalf v. Baldwin, 143 Iowa 310, 120 N. W. 104; Dorris v. Miller, 105 Iowa 564, 75 N. W. 482. Such orders have no greater effect

than that they are prima facie correct. See In re Trusteeship of Lawson, 215 Iowa 752 [244 N. W. 739, 88 A. L. R. 316].''

The order of the trial court in sustaining the motion to strike is, accordingly, reversed and the case is remanded for trial on the objections to the final report.—Reversed and remanded.

Bliss, Richards, Sager, Stiger, Miller, and Hale, JJ., concur.

Mitchell, J., dissents.

Mitchell, J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent.

This court is not confronted in this case with the question of the amount of the fees allowed, although the opinion starts by pointing out the portion of the estate the fees would take, later that it is a ''large fee'' and then by way of mere dictum that perhaps part of the work which is claimed was extraordinary should have been included in the statutory fee.

Now by way of dictum let me say, that an attorney like any other person is entitled to receive compensation for his services, and that the amount of the fee depends not only upon the time spent, but also upon the results accomplished, nature of the questions involved, and the standing of the attorney.

The question that confronts us is, did the court err in overruling the motion to set aside the order allowing the fees, and in sustaining the motion to strike the objections to the final report?

The opinion concedes, I quote:

''We are aware that there is a presumption supporting the regularity of the trial court's ruling in fixing these fees, which is sufficient to support it when not assailed and it is not uncommon for attorneys to proceed to obtain ex parte orders fixing their fees without introducing evidence as to the value of such services.''

So we start with a presumption. How in this record is it overcome?

At the time the order allowing the fees was entered, there was on file a verified statement by the attorney, it covers sev-

998

eral pages in the abstract. It sets out in detail the work done; that there was a will contest and the number of days involved in the preparation and the trial; that there was an appeal to the supreme court and the number of days consumed; the filing of a petition to sell the real estate; that this was resisted and a trial on same; again the time is set out; suit on a promissory note and securing judgment; the construction of the will; that again there was a trial and the time that the attorneys spent in the preparation and trial of same was set out. The court was advised of the fact that a period of 2 years elapsed from the probating of the will to the time that allowance was asked.

Six weeks after the order was entered a motion was filed, not supported by affidavits, but verified by the attorney. I quote from the appellant's motion the part they rely upon:

"That in the application for order fixing fees, the executor has set out vague and indefinite statements as to the services rendered in the conduct of the affairs within estate, and has failed to set out what extraordinary services he performed for the benefit of the estate for which he procured an ex parte order allowing his $750; that the said executor has failed to itemize the services and allege the reasonable value of the same; that the court was misinformed as to the character, extent and value of both ordinary and extraordinary services performed by the executor at the time it entered the order allowing the executor the sum of $1,308.50 as fees; that all the services performed by the executor in the conduct of the affairs of this estate are not worth the sum of $558.50 allowed him for performing services of ordinary character.

"That there was filed with the 'Application for Order Fixing Fees of Executors and Attorneys' a pleading entitled, 'Statement in relation to attorneys fees'; that said statement contains a list of ordinary services performed for the estate by A. H. Bolton and associates for the executor herein, and in addition contains a number of broad, indefinite and vague allegations which purport to set out the extraordinary services the executor's attorneys claim to have rendered said executor for the benefit of this estate; that said pleading contains various misstatements concerning the character of the services performed the time spent in performing them; that the court

was misinformed as to the character, extent and value of the attorney's fees at the time it entered the order allowing attorney's fees in the sum of $3,500 for extraordinary services; that said fee is an unreasonable and an exorbitant fee for the services actually rendered * * * ''

An analysis of these two sections shows that the allegations therein contained are the mere conclusions of the pleader.

The majority cite many cases. All of these are either cases in which a petition was filed to set aside the order, or the motion is supported by affidavits. It must be kept in mind that it is a motion and not a petition that confronts us and that motion was unsupported by affidavits.

While the majority do not agree with me, the appellant does for he concedes that a mere motion unsupported to set aside the allowance is valueless. I quote from appellant's reply brief:

''We agree that a mere motion to set aside an allowance of fees is valueless without some showing in support thereof. Such a showing is found in the motion itself which sets out a series of statements which in polite fashion states that a fraud was practiced on the Court.''

In the case at bar there is no proof, the motion contains the unsupported conclusions of the pleader, not proof of the truth of the statements therein contained and there being no showing in support of the motion, in the words of the appellant —''It is valueless''.

The exceptions to the final report are identical with the motion to vacate and the ruling on the motion to vacate the former order, in my judgment constitutes an adjudication. There must be some end to litigation and the appellants having raised the same question on the motion to vacate, and the ruling of the court on that motion must be considered as final, unless of course there was a showing of fraud which is not claimed in this case. I would affirm the lower court.