Hogan Less, attorneys for Cascade State Bank, executor of the estate of Henry L. Dehner, deceased, filed an application asking the court to allow them the sum of one thousand, seven hundred and two and 15/100 ($1,702.15) dollars, as statutory attorney fees for ordinary services rendered by them to said executor, and the further sum of fifteen hundred ($1,500) dollars, as additional fees for extraordinary services rendered by said attorneys in the administration of said estate.
The administrator with will annexed filed objections to said application objecting to the amount and value of the ordinary *Page 491 
services claimed therein, denying that any extraordinary services had been rendered by said attorneys, alleging that the fair and reasonable compensation for all ordinary services rendered by said attorneys in said estate was the sum of $683.20.
The lower court made an allowance for statutory compensation for ordinary services in the amount of $700, which has not been appealed from by either side, and in addition allowed $200 for extraordinary services. Hogan Less, claimants, have appealed from the order of court fixing the amount for extraordinary services.
This controversy has been in this court on a former appeal. Glynn v. Cascade State Bank, 227 Iowa 932, 289 N.W. 722. In the opinion in that case the facts and circumstances are set out, and we will not repeat them.
We are confronted with but a single question in the case at bar. That is as to the amount of the attorneys' fee claimants are entitled to for the extraordinary services performed. For no question is raised but that the services were extraordinary and no question is raised but that claimants are entitled to some pay for their services. The lower court found that the services were extraordinary, and allowed the sum of $200.
There is no dispute in regard to the law, it is conceded that the burden rests upon the appellants to prove the just and reasonable value of the services for which they claimed an extraordinary fee.
It is also admitted that an appeal in a probate matter from a decision of the court upon an application of an executor or attorney asking compensation for services rendered to the estate is not triable de novo.
In the case of In re Estate of Conkling, 221 Iowa 1332, 1335,268 N.W. 67, 68, the court had before it an appeal from an order of a probate court allowing an executor's fee for extraordinary services rendered in the amount of $450. In affirming the judgment and decree of the lower court, this court said:
"This is an appeal in a probate matter, and this court has held time and again that the findings of fact made by the lower court, if based upon sufficient competent evidence, are binding upon this court, as is the verdict of a jury, and will not be *Page 492 
disturbed on appeal. [Citing cases.] We must therefore turn to the record to ascertain whether or not there was sufficient competent evidence for the lower court to enter the order that was entered. * * * The lower court was familiar with the entire proceedings in this estate. * * * There is sufficient competent evidence to justify the order entered, and it necessarily follows that the judgment and decree of the lower court must be, and it is hereby, affirmed."
With these rules of law in mind, we turn to the record to ascertain the facts.
The extraordinary services claimed by the attorney firm of Hogan Less, appellants herein, were performed in connection with proceedings for a compromise of the inheritance tax which has been levied based upon the appraisement made in 1930 under which appraisement a tax of $3,900 was levied. Additional interest had accrued until there was due under said levy about $5,000 when action was about to be commenced to enforce collection of the tax.
Claimant thereupon took steps to secure a compromise. The evidence shows that Attorney Hogan first had a conference with a representative from the State Treasurer's office, said conference being held in the attorney's office in Cascade. In that conference the representative from the State Treasurer's office advised him that he had been directed to call there and make demand for taxes and that the State was afraid if the matter was allowed to go any further it would lose its lien on the property. That was in 1934.
Later, a letter from the Treasurer of State insisted on payment of the tax and advised that they were going to start suit in court to compel payment. The attorney tried to get an extension of time and succeeded in having them defer bringing an action to enforce collection. He told them he was going to file an application for reduction in the amount of inheritance tax.
With that purpose in view, he checked over all the files in his office in connection with the estate, copy of the inventory of the property and the reports which had been made by the executor, to show what had been paid and what remained unpaid *Page 493 
in the estate, and he made up a new cash account in the estate, bringing the business of the estate down to the summer of 1934. He went to Dubuque, checked the files there, especially the report that had been made by the inheritance tax appraisers, made search in the County Treasurer's office about the returns and what had been done by the assessor in regard to the various properties. He made a complete setup of the condition of the estate at that time, as to what was paid and what was unpaid and the values fixed by the appraisement, and he spent time in legal research to find out the rights of the estate and the procedure necessary to bring the matter to the attention of the State of Iowa, or whatever officer of the State it was necessary to go before.
He made a trip to Des Moines in 1934 to the Attorney General's office; he corresponded with the taxing authorities; he prepared a new list of liabilities deductible and an application addressed to the Executive Council as to a reduction of the inheritance tax and made a general recital of the facts as he had found them and attached thereto an itemized statement of all the items of real and personal property which he thought was correct at that time.
He personally visited and looked over practically all of the real estate and made investigation as to the value of the personal property, taking the assessors', trustees' and prospective buyers' reports of the properties and valuations. In addition to the trip to Des Moines in 1934, he made another in 1936, and in all made two trips to Des Moines especially for this business and another trip in which this matter was combined with another errand which he looked after at the same time.
Mr. Hogan testified that in all he spent about thirty days upon this work, although he kept no written record of same. Appellee offered no testimony, but argued strenuously that the work could not have taken the time claimed by Mr. Hogan. There is also in the record the testimony of two lawyers of standing, members of the Dubuque bar, who testified that in their opinion the attorneys rendering the services set out in this record were entitled to a fee between $1,500 and $1,700. The lower court allowed the sum of $200 for the extraordinary services rendered. Just how the court arrived at that amount *Page 494 
we do not know. The court was not bound by the expert testimony as to the value of these services, but the court could not ignore the factual testimony as to the extent and nature of the services.
Taking into consideration the time consumed in the work performed, the skill in which the matter was handled, the result accomplished, all of which are necessary elements in fixing an attorney's fee, we can come to no other conclusion than that the decision of the trial court on the question of the amount of the extraordinary fee is without support of any kind in the evidence. Through the handling of this matter by the claimants, the estate was saved the amount of $3,500, this being the reduction secured in the inheritance tax.
Considering all the facts as set out in this record, we feel that the claimants are entitled to the sum of $750 for attorney fee for extraordinary services rendered, and this case is reversed with instructions to the trial court to enter an order allowing the claimants that amount. — Reversed.
HALE, C.J., and WENNERSTRUM, MILLER, BLISS, OLIVER, GARFIELD, and STIGER, JJ., concur.
SAGER, J., takes no part.