In re Estate of David Seablom.

Sadie Seablom et al., Appellees, v. Elsie Seablom Mabry et al., Appellants.

No. 45733.

January 20, 1942.

Rehearing Denied May 8, 1942.

Tamisiea & Tamisiea and J. J. Hess, for appellees.

Roy E. Havens, for appellants.

Bliss, C. J.—David Seablom, an elderly bachelor, died intestate leaving as his only heirs, his sister, Sadie Seablom, age 74, and nine nieces and nephews. At his death, he owned 1,090 acres of land in Harrison County, Iowa, which were divided into five farms. He operated one of these farms, and the others were farmed by tenants. His sister kept house for him.

On September 11, 1939, Sadie Seablom and J. M. Liljedahl, the husband of a niece of the decedent, were appointed administrators of the estate. The sister and this niece were the only

heirs who lived in Harrison County. The remaining heirs were scattered about in six different states. The decedent had not been in good health for some time and he had neglected the care of his property in various ways. The farms had mortgages on them totalling $30,500. The interest was delinquent on most of this incumbrance. One mortgage of $12,500 matured October 1, 1939. Real estate taxes and drainage assessments were unpaid, and some of the land was about to be sold for taxes. His bank account was overdrawn, and he owed accounts of several hundred dollars. He kept no books showing receipts or disbursements. He had no written leases with any of his tenants. Rents were owing and on some of the farms back rent for a year or more was in part unpaid. Other tenants claimed offsetting accounts for labor or for produce sold to the deceased. Many of the buildings were out of repair. One of the farm homes was totally destroyed by fire after his death. He owed his sister, for money borrowed and for services in the home, approximately $4,000. She inherited one fifth of his property, and each of the four sets of nieces and nephews owned a one-fifth interest. The objectors to the allowance of the fees owned a one-fifth share. They, alone, objected to the claim of Sadie, and the court, therefore, reduced her claim against the estate by one fifth. A temporary administrator recommended its payment in full.

In addition to the real estate, the decedent had 89 head of cattle, 9 of which were on full feed and about ready to market, 48 head of hogs, 4 horses, machinery sufficient to operate a farm of 190 acres, about 2,000 bushels of the 1938 corn crop, and the 1939 small grain in bins on the farm and stored in different elevators.

On application of the administrators, the court authorized them to continue the operation of the farms. All of the heirs except one of the objectors agreed to this. It was necessary that several thousand dollars be procured very promptly to meet pressing obligations. The State Collateral Inheritance Tax appraisers valued the farms at $74,748.20 and the personal property at $7,280.47. Considerable of the personal property was sold privately, but it was necessary to have a public sale. There

was much work required to get this property ready for sale. From the time of his appointment until the day of the sale on December 7, 1939, Liljedahl devoted substantially his entire time to the estate, including not alone supervision of the farm operations, but physical labor in repairing buildings, hauling lumber, and preparing the livestock for sale. The gross proceeds of the sale were $6,997.49, and the total expense of the sale, which was limited to advertising, clerking and auctioneering, was but $175.02. The administrators filed three reports. The first report filed on May 23, 1940, shows receipts of $16,982.32 and disbursements of $8,192.18. The second report filed November 1, 1940, shows additional receipts of $3,614.05 and disbursements of $3,408.95. The third report, and this is the one which asks for the allowance of fees to the administrators and the attorneys involved in this proceeding, was filed March 29, 1941, shows new receipts of $6,388.02 and disbursements of $6,675.10. The total cash receipts from sales of personal property, rentals, and $1,000 insurance on the house that was burned, to March 26, 1941, were $26,984.39, which amount added to the appraised value of the real estate totals approximately $102,000. The third report proposed a partial distribution among the heirs and left a balance of $3,730.66. The estate has been fully administered and this balance was being held to await the consummation of prolonged negotiations with the State Tax Commission and the Collector of Internal Revenue. Attached to this report is an itemized statement of several pages showing services of the attorneys and the dates thereof. It asks for fees for ordinary services in the amount of $660 and $900 for necessary extraordinary services. There is also a very full report of the services of the administrators attached, asking for fees for ordinary services in the sum of $660 and for necessary extraordinary services in the sum of $1,090. In addition to the services already noted, there were almost weekly trips to the different farms, which were several miles apart, renewing of leases, procuring mortgage extensions, negotiations having to do with estate and income tax matters, general repairs, sinking a well, moving a house 3½ miles to replace the one destroyed, and conducting farming on an extensive scale. Liljedahl estimated he

had traveled over 3,000 miles in his own car on estate business, and charged but $3.00 and $4.00 for expense on a trip to Omaha, and hauling lumber from a sawmill. The mortgage indebtedness is no longer delinquent, all past-due debts and current obligations have been paid, there is money in the bank and the properties have been improved and fully conserved for the heirs.

To this report, the objectors filed a motion that it be made more specific in that the administrators be required to designate which services they claim are ordinary services and which they claim are extraordinary services. The motion makes the same request as to the fees of the attorneys. It was denied.

At the hearing, which was had upon notice, Liljedahl testified fully as to the character and amount of the services rendered by himself and his co-administratrix, and the time which they gave to this work. Two men who have made it their business for years to look after farm properties for nonresidents and insurance companies heard all of the testimony of Liljedahl and testified that the fair and reasonable value of such services was 10 per cent of the gross income. The objectors put in no testimony. They made no objection to the attorney fees. They do not question the performance of the services. This proceeding is not reviewable de novo. The appeal is on assignment of errors. Their objections to the fees of the administrators are (1) that the statement of claim is insufficient to show that the administrators rendered any actual necessary and extraordinary services; (2) they deny the administrators have rendered any such services; (3) that if they have rendered any such services, they are not reasonably worth $1,090.

At the close of the hearing, the objectors moved that the testimony of the two witnesses as to the value of the services be stricken as immaterial, since the only issue in the case was the extent of the ordinary services, and the extraordinary services of the administrators, and the value of each type, and the evidence tended to prove none of these issues. Subject to the ruling on the above motion, objectors moved that the application of the administrators for compensation for extraordinary services be denied because of insufficient evidence to establish such services or their value. The motions were denied. Errors are as-

signed upon these rulings and upon the ruling denying the motion for more specific statement. The trial court found: "That the statutory fees alone which the court finds should be allowed the administrators and their attorneys for their ordinary services herein would be entirely inadequate to compensate said administrators and attorneys for all of their services herein; that the extraordinary services of the administrators and attorneys in connection with the administration of this estate were of more importance in the preservation of the greater portion of the property of this estate than the ordinary services rendered herein, and required more skill, ability and attention than the ordinary services, and required the expenditure of more time than the ordinary services rendered herein; that the claim of the administrators for compensation for extraordinary services in the sum of $1,090.00, and the claim for compensation for extraordinary services for the attorneys of the administrators in the sum of $900.00, are just and reasonable and should be allowed."

We have examined the files in the estate and the transcript of the testimony and find that both the administrators and the attorneys have been meticulous in complying with the law in the administration of this estate. They performed every duty promptly and efficiently under difficult and unusual circumstances. The decedent left little in the way of records or information to guide them, with many matters pressing for immediate attention. We have made no attempt to set out the numerous and varied items of service which they rendered. It is unnecessary, and we may say impossible, for an administrator or a court, under circumstances which existed in this case, to label each item of service as either ordinary or extraordinary. There were many items of service performed which could well be designated as out of the ordinary services performed by administrators. But an administrator is not required to specify every such service and to place a particular value thereon either by pleading or by proof. The best he can do where the work is one of continuous supervision in the operation of extensive properties or business is to state generally the work done and to set out fully and with par-

ticularity the character, extent, and amount of the services performed in prosecuting the business. Neither is he required to offer proof as to the value of each item of service. The administrators offered about the only practicable proof of such services: What was the fair and reasonable value or compensation for work of that kind in that locality? And if such value exceeds the statutory percentage fees, and the services were necessary, the excess value may properly be said to be compensation for services that are in character and amount beyond those usually and ordinarily required of an administrator. The amount allowed was considerably less than the proof would have sustained.

The statutory fees were, at one time, thought to be exceedingly liberal. But the duties of the present day administrator, by reason of other and later legislation, are much more burdensome than those of an administrator when the fee statute was enacted.

We find no merit in the errors assigned, and the judgment is affirmed.—Affirmed.

MITCHELL, HALE, GARFIELD, WENNERSTRUM, MILLER, OLIVER, and SAGER, JJ., concur.