IN RE ESTATE OF ELIZABETH C. HALE.

O. M. THATCHER, Appellant, v. HENRY O. HALE, Appellee.

No. 45467.

MARCH 17, 1942.

Dwight G. Rider and Maurice J. Breen, for appellant.

Alan Loth and C. A. Smedal, for appellee.

GARFIELD, J.—Elizabeth C. Hale died testate on May 5, 1938. The appraised value of her estate for inheritance tax purposes was $437,077. Except for specific bequests to the approximate amount of $60,000, the surviving husband, Henry O. Hale, appellee herein, was the beneficiary under the will. Appellant Thatcher, a former banker who subsequently engaged in the general insurance business, was nominated by the will as executor. The will provided, however, that Henry, the husband, was to act as "an advisor" to the executor. The will named Frank Porter, of Ogden, Iowa, to act as attorney for the estate and fixed his compensation at $3,500. The will was admitted to probate on June 6, 1938, and Thatcher was appointed executor. He duly qualified and proceeded with the settlement of the estate.

On March 14, 1939, appellant Thatcher and appellee Hale had a conversation regarding the amount of the executor's compensation, in which a fee of $3,500 was agreed upon. On the following day, Attorney Porter prepared an application, verified by appellant, reciting "that your Executor has an agreement with Henry O. Hale * * * that for his services as Executor he shall receive the sum of $3,500.00," and asking that half that amount be then allowed to him. Affixed to the application was the written consent of Hale that $1,750 be allowed Thatcher as half his fees. On March 25, 1939, an order was made on this application authorizing the payment of $1,750 at that time.

This order recited that it appears "there is an agreement between the said Executor and Henry O. Hale, the residuary legatee in said Estate, that said Executor shall receive the sum of $3,500.00 for services * * *." On June 1, 1939, a similar application was prepared by Porter and sworn to by Thatcher asking the allowance of the remaining $1,750 for the executor. Hale's written consent was also appended to this application. On June 3, 1939, an order was made upon this application allowing the remaining $1,750 to Thatcher. This order also recited the $3,500 agreement between the executor and Hale. It is these two orders of March 25 and June 3, 1939, which appellant asked to have set aside in the application, now before us, filed in the probate court on September 7, 1939.

In this application appellant alleged that he was induced to agree to $3,500 as his fee by the representation of Hale that he would purchase his fire and other insurance from Thatcher's insurance agency; that shortly after the $3,500 was paid Hale repudiated his previous representation, notified appellant to cancel certain insurance policies, and advised him that Hale's wife would thereafter write the insurance. The application asked not only to have the previous orders set aside but for the full "statutory allowance for his services," plus $5,000 additional. The day after the application was filed Hale filed answer denying much of the application, pleading a contract that the compensation was to be $3,500, and an estoppel against appellant. The application was tried before Judge Henderson, commencing January 8, 1940. This appeal is from the denial of the application.

I. Appellant's first assignment of error is that "the presiding judge erred in insisting that this case be submitted to him." The complaint is without merit.

The application was first set down for hearing on September 22, 1939. The matter was postponed by agreement until the November 1939 term, presided over by Judge Henderson. Appellant's counsel were unable to try the case at that time and an order was made on November 21, 1939, specially setting it for January 8, 1940. This order recited that the case "is now specifically and finally assigned and set as the first cause to be tried at that time [the January 1940 term], and all parties are required

to be prepared to proceed with it promptly and finally, and if any of the present counsel are not ready or able to proceed with trial at that time, the parties must have some other counsel prepared to do so, and no motion for further continuance, adjournment or postponement is to be entertained." No exception was taken to this order. Judge Henderson was also the presiding judge at the January 1940 term, pursuant to the regular published court schedule.

On January 3, 1940, appellant filed a motion for continuance on the ground that the size of the estate and the amount of the executor's work could not then be determined. Principal basis for this contention was the claim that the residuary legatee, Hale, had concealed over $400,000 of estate assets (which went to him under the will), to recover which the executor had on December 28, 1938, instituted two suits against Hale. (See In re Estate of Hale, 231 Iowa 1052, 2 N. W. 2d. 772. The motion for continuance made no objection to trial before Judge Henderson.

On the day set for trial appellant's counsel told the court, in substance, that, while they had filed a motion for continuance, they were ready for trial if the court thought it advisable or proper to proceed in view of the pendency of the two suits against Hale. Counsel also suggested, for the first time, that perhaps Judge Henderson would feel he should not hear the matter because of some connection the judge had had with another case in another county of the judicial district, in which the second wife of appellee had some interest (Hale having remarried). We have carefully read the record pertaining to these matters but deem it unnecessary to incorporate them in this opinion. We are very clear that they are wholly insufficient to show that Judge Henderson was disqualified from hearing this matter. Appellee and his counsel were present, insisting on trial. Judge Henderson attempted, without success, to get another judge to come from another county to preside. The judge finally asked counsel for appellant, quite insistently, to say frankly whether there was objection to his hearing the case, and if so, why. Counsel told Judge Henderson repeatedly at this time, and also previously, that they were not objecting to him if he was willing to try the case. "If you are willing to try the case," counsel told the court, "I am perfectly content to try it. I am not objecting to

you. If Your Honor feels we should proceed, we will call the first witness.'' Thereupon the court overruled the motion for continuance and the trial proceeded.

It is clear that the above record presents no reversible error. Counsel, in effect, waived their motion for continuance and also any objection they might have to the trial judge. Appellant cannot complain that the court took counsel at their word and proceeded with the trial. Even where a judge is disqualified, a party may waive his right to object and may consent to trial. Stone v. Marion County, 78 Iowa 14, 42 N. W. 570; Incorporated Town of Dows v. DeLong, 149 Iowa 251, 128 N. W. 341; Annotation, 5 A.L.R. 1588.

Furthermore, even if appellant had not, in effect, waived both his motion for continuance and any objection to the trial judge, no abuse of discretion appears in overruling the motion and proceeding with the trial. It is, of course, elementary that a court has a wide discretion in ruling on a motion for continuance. As to the claim of disqualification, it is actual prejudice on the part of a judge, and not mere apprehension of it, which disqualifies. The disqualifying interest of a judge does not include every bias or partiality which he may entertain. 33 C. J. 1000, section 151. As having some bearing, see Piuser v. Sioux City, 220 Iowa 308, 320, 262 N. W. 551, 100 A.L.R. 1298, and cases cited.

It is not to be understood from the foregoing that a litigant may effectively raise the question of prejudice on the part of the judge by merely suggesting such prejudice. Code section 11408 (3) provides that a change of place of trial may be granted where an affidavit is filed, verified by the objecting party and three disinterested persons, stating that the judge is so prejudiced against a party that he cannot obtain a fair trial. Appellant made no attempt to comply with this statute.

II. Appellant's second and third assignments of error are that ''The court erred in deciding the case on a breach of contract theory, and in refusing to allow a proper and reasonable fee commensurate with the importance and value of the estate.''

Thatcher is the only witness who testified to his version of the talk with Hale, which forms the basis of the present application. It was denied by both Hale and his wife, who claims to

have heard the talk. The burden, of course, rested upon appellant. The court stated in his written decision that he preferred to accept appellant's version of the conversation for the purposes of the case. The substance of Thatcher's testimony as to his talk with Hale is about as follows:

"He [Hale] asked me what that fee would be, and I told him of the statutory rule, two per cent, and he asked how much that would figure to, and I undoubtedly told him about $8,100, and he said to me 'That seems pretty high in view of the fact that I have been giving you large amounts of insurance and will be able to give you more in the future.' I said to him if we would agree upon something less than the statutory fee or what I might reasonably hope or expect the court would allow, would he agree to give me his future insurance. Mr. Hale said to me 'when anyone works for me, I want them to have a good salary and if you have $3,500 with what you will make off me from my insurance that I can give you, it will make you a good salary.' In substance I said 'That will be satisfactory.' There was nothing said as to how long a time I would have his insurance. I don't think he said he would give me all of his insurance, although he had me to understand that he was going to give me what was lodged in one certain agency here."

The court concluded that Thatcher's own version of the talk was not sufficiently definite to amount to a contract or to entitle him to relief, "taken from any point of view, whether as a contract, promise, inducement, consideration, a fraud, false representation, or under any other name."

Support for appellant's claim that appellee "tricked him" into accepting a fee of $3,500 is his own testimony, the substance of which is above quoted, coupled with the fact that commencing August 11, 1939, Hale discontinued placing his insurance with appellant's agency. On this last date, appellee and his wife sent Thatcher a fire insurance policy for cancellation, with the statement: "Mrs. Hale is now an authorized insurance agent, and henceforth, we shall do our own policy writing."

Appellant's complaint is that the court adopted a theory in deciding the case upon which appellant had not proceeded; that he was merely attempting to show he was misled by Hale and pro-

cured the orders allowing him $3,500 because of the deception; that the orders were grossly unfair and should be set aside and the proper fee determined. We do not think the decision is open to this criticism. But even if the reasons given by the court for the decision were erroneous, it would not avail appellant.

■ The preliminary recitation of the judge's reasons forms no part of the judgment proper, which ordered and adjudged the dismissal of the application and the taxation of costs to appellant. If this conclusion is right, any error in the judge's reasoning is not prejudicial. In re Estate of Evans, 228 Iowa 908, 918, 291 N. W. 461; Northwestern Mut. L. Ins. Co. v. Blohm, 212 Iowa 89, 97, 234 N. W. 268; Van Gorden v. Schuller, 192 Iowa 853, 858, 185 N. W. 604; Baker v. Palmer, 192 Iowa 1321, 1323, 186 N. W. 419; Switzer v. Davis, 97 Iowa 266, 66 N. W. 174; Wise v. Wilds, 77 Iowa 586, 591, 42 N. W. 553. The court made no findings of fact pursuant to section 11435, Code, 1939. The appeal is from the judgment, not the reasons assigned therefor by the court.

As appellant concedes, this matter, being in probate, is not triable de novo here. The judgment, if supported by substantial evidence, like the verdict of a jury, is binding upon us. In re Estate of Conkling, 221 Iowa 1332, 1335, 268 N. W. 67; In re Estate of Jefferson, 219 Iowa 429, 432, 257 N. W. 783; In re Estate of Oelwein, 217 Iowa 1137, 1141, 251 N. W. 694.

■ We have also held repeatedly that the trial court has considerable discretion in the allowance of compensation to administrators and their attorneys. Turner v. Ryan, 223 Iowa 191, 272 N. W. 60, 110 A.L.R. 554; In re Estate of Lipp, 209 Iowa 409, 413, 227 N. W. 913; In re Estate of Chismore, 194 Iowa 300, 189 N. W. 770. It is true that where the allowance is not supported by adequate evidence, this court will review the order. In re Estate of Wiggins, 230 Iowa 1087, 300 N. W. 289; In re Estate of Dehner, 230 Iowa 490, 298 N. W. 656; Glynn v. Cascade State Bank, 227 Iowa 932, 289 N. W. 722. We think the dismissal of appellant's application for an increased allowance has adequate support in the evidence and that no abuse of discretion appears.

Appellant argues that the orders of March 25 and June 3, 1939, fixing the fee at $3,500, do not amount to an adjudication

but were mere ex parte orders subject to revision at any time under section 12049, Code, 1939. Appellant relies upon In re Estate of Metcalf, 227 Iowa 985, 289 N. W. 739; In re Estate of Schropfer, 225 Iowa 576, 281 N. W. 139; Estate of Rabbett v. Connolly, 153 Iowa 607, 133 N. W. 1060; In re Estate of Douglas, 140 Iowa 603, 117 N. W. 982; In re Estate of Sawyer, 124 Iowa 485, 100 N. W. 484, and a few other cases. Without reviewing these decisions, in the main they involve an ex parte allowance to an administrator or his attorney, to which objections were subsequently made by the beneficiaries of the estate, and hold that such an ex parte order does not amount to an adjudication but is merely prima facie correct and is subject to review.

The present controversy differs from the cited cases in several respects. Here there was an agreement between the executor and the interested beneficiary regarding compensation, the amount of which was allowed upon the sworn applications of the executor *who now challenges the allowance.* See In re Estate of Olson, 213 Iowa 784, 239 N. W. 527. To the applications were attached the signed consent of the beneficiary, which obviated the necessity of notice upon him and in effect reduced the agreement to writing.

█ It is well settled that an administrator and the heirs may agree upon the amount of the former's compensation, where the rights of creditors are not involved. In re Estate of Schropfer, 225 Iowa 576, 583, 281 N. W. 139; In re Estate of Olson, supra; In re Estate of Lane, 199 Iowa 520, 202 N. W. 244.

However, we deem it unnecessary to determine whether the authorities cited by appellant are applicable here. It may be assumed that they are, without entitling appellant to a reversal. The hearing resulting in the order appealed from was a complete review of the earlier orders sought to be set aside, and there is ample evidence to sustain the judgment.

Although appellant is not entitled to a review de novo, we have read the record with care. Were we to fix the compensation, we might feel that appellant earned a larger fee. Nevertheless, we are not prepared to say that the trial court's order does appellant any great injustice. The following facts, among others, tend to support this conclusion. The services of the executor were largely completed within a year following his appointment.

During this time his normal business continued, with the usual revenue therefrom. When appellant in previous years had devoted his full time to banking his annual salary was $3,600. Appellant is an experienced business man and no one could judge the value of his services better than he. Even if his version of the arrangement with Hale were to be carried out, appellant would probably receive nothing like what he is now claiming. The court found from Thatcher's own testimony that $300 was the annual amount of commissions that might be expected from the Hale insurance. But only an undisclosed portion of this amount would have gone to Thatcher, because the extent of his interest in the insurance agency (which was a corporation) does not appear—and this for only an indefinite future time. Then, of course, considerable time and effort would be involved in earning these commissions.

While the estate was large, it was in good order. Hale assisted in the settlement of the estate, particularly in looking after the farms and the collection of farm rentals. Counsel for appellee refer to their client as, in effect, a "coexecutor." While this may be an exaggeration, Hale was allowed by court order $3,500 for services rendered the estate during the year of administration. This order was made pursuant to an application, verified by appellant, reciting that Hale had assisted in the collection of interest, rents, and handling the estate property.

Appellant wrote the executor's bond of $100,000, and either he or the agency in which he was interested received the commission therefor. During the administration of the estate appellant sold a farm to Hale, which belonged to an insurance company, and received from the vendor a commission on the sale. These were two incidental indirect benefits to appellant. The attorney for the estate accepted $3,500 for his services, pursuant to the stipulation in the will.

This court has no desire to belittle the value of executor's services. The statute, Code section 12063, provides for the allowance for services rendered of such reasonable fee as the court may determine, not exceeding the percentages therein fixed. This statute is plain and unambiguous. The executor is not necessarily entitled, as a matter of right, to the statutory percentages. In re Estate of Lindell, 220 Iowa 431, 262 N. W. 819.

Appellee's motions to dismiss the appeal and to strike appellant's amendment to abstract are overruled. The judgment is affirmed.—Affirmed.

All JUSTICES concur except MITCHELL, J., who takes no part.