In re Estate of Mary Alice Robinson.

F. L. Meeker, Appellant, v. Perry A. Moore, Administrator, et al., Appellees.

No. 46275.

June 15, 1943.

C. H. Van Law, of Marshalltown, for appellant.

Henry Curvo, of Clear Lake, and Stipp, Perry, Bannister & Starzinger, of Des Moines, for appellees.

SMITH, J.—This case concerns the question of attorney's fees in an estate under ancillary administration. The foreign will of decedent was probated in the spring of 1935. Appellant looked after the probate and thereafter represented first the executrix and then, after her death, the administrator with will annexed. His services continued until the spring of 1940. The administration was not then settled and the estate is still open.

It will be necessary to set out in some detail the services performed by appellant. Those we class as "ordinary" under the statute appear to have been greater in this case than usual. There was an unusual amount of correspondence with attorneys in California, where the principal administration was pending, and with attorneys in Mason City and Des Moines who represented matters connected with the estate.

The duties of the attorney were undoubtedly made more onerous and his responsibilities increased by reason of the fact that the administrator lived at some distance from Marshall county where the proceedings were pending· and the property was situated. We may assume that some of the responsibility usually shared between personal representative and attorney was carried by appellant alone. It is undisputed that the administrator, who lived some eighty or ninety miles distant, expressly requested appellant to "take full charge of the estate" and "to go ahead and keep him posted and he would come down here once in a while * * *."

In addition to these considerations there was the further circumstance of a change in personal representative, the preparation and presentation of final report on behalf of the deceased executrix, and the procuring of appointment and qualification of the succeeding administrator with will annexed.

Two pieces of real estate were sold under order of court

for $700 each and in connection therewith appellant was allowed an attorney's fee of $50 in each case.

Two mortgage-foreclosure suits were handled by appellant on behalf of the estate, one for approximately $2,850 and the other for $5,068. Both eventually went to decree, after the usual delays and difficulties under the moratorium laws. Eventually the estate realized something over $8,000.

The undisputed testimony of appellant is to the effect that this result was largely due to his efforts and insistence, over the opposition of the administrator, who desired to dispose of the matter at a sacrifice of several thousand dollars in the interest of an immediate closing and distribution of the estate.

Appellant received his statutory fees from these foreclosures in the sums of $68.43 and $117.65 respectively, $27.47 of the latter sum, however, being interest. He was allowed $500 in the administration proceedings for extraordinary services in connection with these foreclosures.

Supplementing these amounts, he was allowed $50 on each foreclosure as he reported settlement and procured order of approval.

In addition to the allowances already mentioned, appellant was allowed $75 on the occasion of the approval of the final report of the executrix, and later $50 for correspondence with California heirs, obtaining order to invest funds, interviews with mortgagees, and drafting second annual report and order thereon.

All these allowances, aggregating $825 (not including the statutory foreclosure fees) were procured ex parte. There were two other small items received by appellant in connection with the foreclosure suits: one for $10.50 advanced by the administrator for costs, which appellant concedes he should account for; and one for $13.07, appellant's right to retain the latter being in dispute.

In this proceeding the appellant now seeks such further sum "as the Court may deem just and equitable." The appellees, being the administrator with will annexed and various interested legatees, resist his claim, denying the allegations as to services rendered, especially denying the allegations as to extra-

ordinary services, and alleging in a second division that appellant has already drawn various sums amounting to $1,034.65 (being the various amounts we have already referred to); that the value of the estate does not exceed $10,000 and the maximum fee the court could allow does not exceed $320.

In a counterclaim and amendment thereto appellees ask that the various ex parte allowances of fees be set aside and that personal judgment be rendered against appellant for the total of the sums received by him, minus the statutory fees for ordinary service.

The court made a long finding of facts and allowed appellant a total sum of $750 for all fees, and ordered him to account to the administrator for $295.45, being the amount of overpayment found by the court to have been made.

It should be added that two lawyers of high standing testified, as did appellant, that the extraordinary services were worth from $1,750 to $2,000. No evidence was offered by appellees as to value.

Appellant specifies and argues three errors:

1. Error in crediting the estate with the attorney's fees taxed as costs in the foreclosure suits;

2. Error in entering the order complained of, superseding prior allowances, without vacation of prior orders and without evidence to support vacation of the prior orders; and

3. Error in ignoring the uncontradicted expert testimony as to value of services.

I. As to the first specification, the decision must depend somewhat upon an interpretation of the finding and order of the trial court. There can hardly be a disagreement in opinion among lawyers as to the nature of the so-called ''statutory'' attorney's fee permitted to be taxed against defendant as costs in actions upon written instruments containing agreements to pay attorney's fees. Code 1939, sections 11644–11646.

The taxation of such fees as costs under the statute involves no element of judgment or discretion but is ''as purely formal as the act of the clerk in computing the number of words in a pleading in order to tax a copy fee.'' Bankers' Iowa State Bank v. Jordan, 111 Iowa 324, 326, 82 N. W. 779, 780. By the same token, the amount so taxed as against the opposite

party cannot be considered as any evidence of the value of the attorney's services to his client.

There was no agreement between appellant and the executrix or the administrator as to what the charge would be. The former is entitled to the reasonable value of his services. The statutory limitation of the legal fee is for the purpose of regulating the costs for counsel's fees between the parties and not the compensation to be allowed between attorney and client. 7 C. J. S., Attorney and Client, 1018, 1019, section 161b.

Our statute requires the attorney to file affidavit that there is no agreement for division of attorney's fees between himself and client or between him and any other person. Appellant, in effect, argues from this premise that the court had no right to take these foreclosure fees into account in determining what, if any, additional fees should be allowed and that to do so would constitute a violation of the spirit of the statute. We cannot agree with this contention. It implies that an attorney has the right to charge his client full value for his services, allowing no credit or offset for the amount collected from the adverse party. Such is not according to the usual practice and opinion of the profession. We have found no decision in point.

On principle, the proposition seems untenable. The fee is taxed in favor of the attorney, pursuant to a contract made by the client, presumably for his own benefit and not as a bonus to some then unidentified attorney. The sole purpose of the payee would seem to be to minimize his own expense in event of litigation. We do not believe the spirit of the statute requiring the affidavit is violated by giving the client credit for the amount paid by the adverse party.

Under the record here, appellant rendered valuable service outside of and beyond the mere initiation and conduct of the foreclosure suits and reduction of the mortgages to judgment. The statutory fees paid by the adversaries may or may not have been sufficient to pay for the services to date of judgment. They clearly were not intended to cover the work and skill which resulted in approximately full collection of the mortgages that were confessedly bad investments.

Did the trial court, in arriving at the amount due appellant and requiring him to credit back these statutory foreclosure fees, first credit appellant for his *entire* service in connection with the foreclosures and the collection of the foreclosure judgments? If so, then the court properly charged against him the amounts paid by the foreclosure defendants.

The résumé or finding of facts dictated into the record by the court leaves no doubt as to its intentions on this point. It makes clear that it considered *all* services in connection with the foreclosures to be extraordinary in character and it apparently took them all into account in fixing what it considered the value of all services, both ordinary and extraordinary. That being true, there was no error in deducting therefrom the amount of the statutory foreclosure fees.

II. Appellant urges and argues that the court erred in making the order complained of herein without any formal vacation of the various former allowance orders that had been made from time to time ex parte and without evidence to warrant vacating them. They were not adjudications. In re Estate of Sawyer, 124 Iowa 485, 100 N. W. 484; In re Estate of Robinson, 231 Iowa 1099, 3 N. W. 2d 158. We do not believe Code sections 10798 and 10801, cited by appellant, are applicable here. If they were, they would practically nullify section 12049.

The latter section quite clearly applies. It provides that:

"Mistakes in settlements may be corrected in the probate court at any time before his [the administrator's] final settlement and discharge * * *."

See the decision on former appeal in this case. In re Estate of Robinson, supra. We have examined the cases cited by appellant but do not deem them controlling here.

Appellant's contention, in brief, is, that after the record has been signed by the judge, or the term has expired, the court loses control of its record and is without power to amend, correct, or expunge any entry upon its own motion; that thereafter the record is only subject to correction, amendment, or vacation upon proper application of an aggrieved party; and.

that appellees, by their pleading herein, made such application, but failed to submit proofs in support thereof.

We cannot agree. Under the pleadings the court had the issue squarely before it. It treated the "counterclaim" as a petition to review the ex parte orders. The evidence as to the value of appellant's services was in. That same evidence was competent on the issue of vacating the former allowances. As they were ex parte orders and the estate was still open, no showing of fraud or other equitable ground was necessary.

The fact that there was no evidence offered by appellees and that the court did not *expressly* vacate the former orders. seems immaterial. The order made clearly superseded all former allowances.

III. There remains the troublesome question as to the effect to be given by the trial court to the uncontradicted expert testimony as to value and by this court to the decision of the trial court in the exercise of its own undoubted discretion. It involves also a consideration of the proper function of this court on such appeal. Counsel and the profession generally may well be confused by some inconsistence in the language of our decisions.

We have repeatedly announced that these proceedings are at law and not triable de novo on appeal. In re Estate of Conkling, 221 Iowa 1332, 268 N. W. 67 (executor's fee); In re Estate of Anderson, 216 Iowa 1017, 250 N. W. 183; In re Estate of Mann, 217 Iowa 1134, 251 N. W. 83 (executor's fee); In re Estate of Dehner, 230 Iowa 490, 298 N. W. 656; In re Estate of Chismore, 194 Iowa 300, 302, 189 N. W. 770, 771.

In the Chismore case, supra, it was said:

"We must treat the order of the trial court much as we do the verdict of a jury. We can reduce the amount of an allowance made to the administratrix on any item, in the same manner that we have power to order a reduction of an excessive verdict, and for like reasons. But we cannot, under such circumstances, review the questions of fact, and *increase* the amount allowed by the trial court, any more than we can increase the amount of the verdict of a jury."

Almost nineteen years later, the determination of the lower

court in a similar case was rejected and the allowance for extraordinary service *raised* from $200, fixed by the trial court, to $750. This was done in the face of undisputed opinion testimony of reputable lawyers fixing the value at $1,500 to $1,700. In re Estate of Dehner, supra. The rejection, in that case, of the trial court's allowance as not supported by the evidence and as an abuse of discretion was not inconsistent with former decisions; but the fixing of the fee by this court without remanding for new trial was inconsistent with the "no trial de novo" theory. This latter part of the decision also had some support in our decisions. See In re Estate of Sawyer, supra.

We think it should be recognized that, while cases involving the allowance of attorney's fees and fees of executors and administrators are not triable de novo on appeal in the ordinary sense, they do fall into a classification peculiarly subject to judicial knowledge and discretion. The decision of the trial court in such cases should be upheld unless unsupported by the evidence or so at variance with it as to constitute an abuse of judicial discretion; or unless the trial court has overlooked some material consideration or fact that manifestly would affect the result. However, where there is such abuse of discretion as to warrant setting aside the decision below, or such failure to take into account a material fact or consideration as to make the result erroneous, we deem it our duty to correct the error if under the record it can properly be done, and to fix such fee as we deem reasonable, rather than to prolong the litigation by remanding for new trial. To this limited extent these cases may be said to be triable de novo.

In applying this rule to the instant case we are under some disadvantage because the court, in fixing the total fee, made no division between ordinary and extraordinary services. Running through the pleadings and brief of appellees is, in effect, an admission that the value of the estate was $9,000 or $10,000 and that the fee for ordinary service might be $300 to $320. Of course, the full work of completing the administration was not performed by appellant.

It is true the work in connection with the foreclosure and collection of the mortgages, which constituted the prin-

cipal item of extraordinary service, did result in bringing approximately $8,000 into the estate from assets admittedly of doubtful value. It was not an ordinary collection service. It was accomplished by resort to the pressure and influence of appellant's position as a lawyer, evidently applied with skill and effectiveness.

It is possible that some of us would favor a greater allowance than was made by the trial court in view of the considerations which we have mentioned. However, we do not feel that the allowance made is so far out of line as to justify a reversal of the case or a modification by substituting our judgment for the judgment of the trial court. Its finding indicates a fair and judicial attempt to appraise the situation. It is our judgment that its decision should be, and it is, hereby affirmed.—Affirmed.

All JUSTICES concur.