IN RE ESTATE OF BENJAMIN F. MYERS; W. C. SOUTHWICK, Administrator with will annexed.

No. 47079.

NOVEMBER 11, 1947.

R. K. Craft, of Adel, and Charles I. Joy, of Perry, for appellants.

George H. Sackett, of Perry, and Hobart E. Newton, of Stuart, for appellees.

GARFIELD, J.—This appeal involves the amount of compensation which should be allowed R. K. Craft as attorney for W. C. Southwick, administrator with will annexed of the estate of Benjamin F. Myers, deceased. Mr. Craft contends $820, the amount allowed by the trial court, is inadequate.

In August 1931, Benjamin F. Myers died testate and a son and two sons-in-law were appointed executors of his estate. In April 1939, the widow and a daughter petitioned for the removal of the executors. Following a trial such removal was ordered and affirmed by this court. In re Estate of Myers, 229 Iowa 170, 294 N. W. 235.

On October 4, 1939, W. C. Southwick was appointed and qualified as administrator with will annexed and employed R. K. Craft and Carl P. Knox as his attorneys. Mr. Knox died about a year later and Craft continued as attorney for the administrator until Southwick's death in February 1945. On March 22, 1945, one King was appointed administrator c. t. a. to succeed Southwick and employed another attorney.

On November 6, 1945, a final report herein was filed on behalf of Southwick by the administrator of his estate. This report contains an itemized statement of attorney fees claimed by Craft which totals $4,896 of which he had been paid $820. Objections to the fees so claimed were made by King, present administrator, and by testator's son and three of his four daughters. Following trial, the court refused to allow Craft more than the $820 previously paid him and he has appealed to this court.

■ ■ We have frequently said such a proceeding as this is reviewable on assignment of errors and not de novo in this court. In re Estate of Hale, 231 Iowa 1018, 1024, 2 N. W. 2d 775, 779, and cases cited; In re Estate of Seablom, 231 Iowa 608, 611, 1 N. W. 2d 701, 703; In re Estate of Dehner, 230 Iowa 490, 298 N. W. 656, 143 A. L. R. 669. We will interfere with a probate order regarding attorney fees that lacks adequate or sufficient support in the evidence. In re Estate of Wiggins, 230 Iowa 1087, 1088, 300 N. W. 289, 290; Glynn v. Cascade State Bank, 227 Iowa 932, 937, 289 N. W. 722; In re Estate of Morgan, 225 Iowa 746, 749, 281 N. W. 346, 348.

■ The amount allowed by the probate court will be reduced by us if clearly excessive. Glynn v. Cascade State Bank, supra; In re Estate of Anderson v. Application and Claim of Stason & Knoepfler, 216 Iowa 1017, 1019, 250 N. W. 183; In re Estate of Murphy, 209 Iowa 679, 684, 228 N. W. 658; In re Estate of Munger, 168 Iowa 372, 378, 150 N. W. 447, Ann. Cas. 1917B, 213; In re Estate of Sawyer, 124 Iowa 485, 494, 100 N. W. 484.

It would seem to follow that such an allowance will be increased by us if manifestly inadequate, since we should treat claimants for attorney fees as fairly as we do objectors to such

claims. This is the effect of our holding in In re Estate of Dehner, 230 Iowa 490, 298 N. W. 656, 143 A. L. R. 669. See, also, In re Estate of Wiggins, 230 Iowa 1087, 300 N. W. 289.

We have frequently held the trial court has considerable discretion in the allowance of compensation to administrators and their attorneys. In re Estate of Hale, 231 Iowa 1018, 1024, 2 N. W. 2d 775, 779, and cases cited. But the exercise of such discretion must be reasonable. Glynn v. Cascade State Bank, supra.

We have also observed that the duties and responsibilities of administrators and their attorneys have increased in recent years. In re Estate of Seablom, 231 Iowa 608, 613, 1 N. W. 2d 701, 703, 704; In re Estate of Johnson, 229 Iowa 1002, 1006, 295 N. W. 878, 881.

 The burden of showing the services rendered and the value thereof rests upon the claimant. In re Estate of Wiggins, supra; Glynn v. Cascade State Bank, supra, and cases cited. Such burden was fully met here.

 Among the matters to be considered in fixing attorney fees for extraordinary services in probate are the time consumed, the skill which is used and the result accomplished. In re Estate of Dehner, supra. See, also, Glynn v. Cascade State Bank, supra, and cases cited. The matters to be considered in the allowance of attorney fees generally are fully set out in annotation 143 A. L. R. 672.

This controversy is quite similar on principle to In re .Estate of Dehner, supra. We think the amount allowed by the trial court here lacks sufficient evidential support and is clearly inadequate.

Mr. Craft's first connection with this estate seems to have been as attorney for Lenore Sulgrove, a daughter who has sided with her mother (the widow) in the numerous controversies that have arisen with the son and three other daughters. The son and the husbands of two of the three daughters were the original executors. In April 1939, Mr. Knox as attorney for the widow and Mr. Craft as attorney for Lenore petitioned for the removal of the executors. As stated, such removal was ordered, affirmed upon appeal, and the appointment of Mr. Southwick followed.

 We concur in the trial court's finding that the estate benefited from the services of Mr. Knox and Mr. Craft in defending in this court the order of removal and reasonable compensation should be allowed therefor. Mr. Craft testified he had not been paid for his services upon that appeal.

 In January 1940, the original executors filed their final report to which Southwick, administrator, the widow and Lenore separately filed voluminous objections that were heard in January, February and July, 1941. Mr. Craft acted as sole attorney for Southwick in this trial which lasted five to six days and resulted in a judgment for $11,268 against the executors and the surety on their bond. As a result of Craft's efforts the trial court increased the amount of this recovery to $12,244.

The executors, Mr. Percy, one of their attorneys, Southwick, administrator, and the widow all appealed to this court from the above decision which we affirmed in part and reversed in part. In re Estate of Myers, 234 Iowa 502, 12 N. W. 2d 211, 150 A. L. R. 254. The abstract of record in this court contains two hundred fifty-eight pages. Several briefs and arguments were filed by Mr. Craft, including a petition for rehearing which was denied. As a result of this litigation, the American Surety Company, which signed the executors' bond, paid Southwick $6,922.

Mr. Craft testified his services in preparation and trial upon the objections to the executors' final report were reasonably worth $1,200 and in connection with the appeals $1,500. He said his time in preparation was worth $5 an hour and in district court $50 a day. Blake Willis, a practicing attorney in Dallas county, testified such charges of $5 and $50 were fair and reasonable. Robert J. Bannister, of the firm of attorneys that represented the American Surety Company in the controversy with the former executors, testified Mr. Craft's charges of $1,200 and $1,500 in this litigation were reasonable. He also corroborated Craft in several other respects. *There is no testimony to the contrary. Indeed the objectors offered no evidence.*

Without going into detail, we may observe that the controversy with the former executors was very complicated as our opinion, cited last above, discloses. We think the trial court

clearly underestimated the value of Craft's services in this litigation. That they were extraordinary services there can be no doubt. In re Estate of Wiggins, supra, 230 Iowa 1087, 1089, 300 N. W. 289, 290; Glynn v. Cascade State Bank, supra, 227 Iowa 932, 941, 289 N. W. 722; In re Estate of Leighton, 210 Iowa 913, 916, 224 N. W. 543.

Immediately following court approval of the employment of Knox and Craft as attorneys for Southwick, administrator, they asked for and obtained court authority to sue W. M. Myers, the son, and Paul Wolf and Lewis Jolley, sons-in-law, the three former executors, on indebtedness owing by them individually to the estate. Two days later three separate actions were instituted in district court on these obligations, and a fourth suit asked an accounting from them. These cases were never tried since the items of indebtedness declared upon were considered upon the trial of the objections to the executors' final report. We concur in the trial court's finding that these actions were brought in a good faith attempt to preserve the assets of the estate, prevent the bar of the statute of limitations and the services were reasonably necessary.

A judgment creditor of the son W. M. Myers and the daughter Florence Wolf and her husband Paul brought actions in district court to subject to the payment of the judgments the interests of the son and daughter in land left by testator. Southwick, administrator, was made a defendant to each suit and Craft appeared for him therein. The plaintiff then filed dismissals as to Southwick. Craft then asked for and obtained court authority for the administrator to intervene in each action. Petitions of intervention were filed by the administrator which alleged that the interests of the son and daughter in the real estate were contingent, not vested, also that the will created an equitable conversion and the debtors had no interests which could be reached by the creditor. Similar petitions of intervention were filed by Knox for the widow and by Craft for the daughter Lenore.

The controversy was heard on motions by the creditor to dismiss the petitions of intervention and upon a stipulation of facts. The court held the interests of the son and daughter were

contingent, the judgments were not liens on the land, and the creditor was entitled to no relief.

It may be here stated that the will provides for a life estate to the widow in five hundred sixty acres of land; upon her death it is to be sold by the executors and the proceeds divided ''among my children who may be living at the time of said sale * * * and the issue of any child who may be deceased * * *.''

The probate court refused to allow compensation for Craft's services in the creditor's suits on the theory the son and daughter individually, not the estate, benefited therefrom and it was unnecessary for the administrator to participate therein since the individuals involved were adequately represented.

Conceding without deciding the debtor son and daughter primarily benefited from the defense of these two actions and should bear the greater part of the expense involved, we think Craft is entitled to some compensation for what he did since the administrator was made a party defendant in the first instance and the estate received at least some benefit from the outcome of this litigation. It sufficiently appears Craft acted in good faith and as authorized by the probate court. That testator's will forbids any incumbrance against the real estate during the widow's life by her or any of the remaindermen evidences testator's intent that title to the land be kept clear until time of sale and distribution of the proceeds. Craft's services in the creditor's suits contributed to that end.

There are several other matters in which Mr. Craft acted as attorney for the administrator. We will mention two. One was an application for the allowance of fees by Mr. Percy, one of the attorneys for the original executors and trustee in the bankruptcy of one of the daughters. It also appears Southwick, administrator, was garnished at the suit of a judgment creditor of one of the daughters and Mr. Craft represented the garnishee in this matter.

In addition to the above, Mr. Craft performed the ordinary services usually rendered by an attorney during the period of his employment. He prepared four reports for Mr. Southwick in addition to the final report on his behalf by his administrator and also numerous applications and court orders.

The principal items that came into Southwick's hands are $1,065 received from Mr. Percy, trustee; $63, the balance held by the former executors; four promissory notes totaling about $3,500 principal, with a large amount of interest, each of which was signed by one of the three original executors individually (these are the obligations upon which the administrator brought suit against the makers), and the $6,922 received from the American Surety Company on April 29, 1944. Southwick also collected about $10,000 of farm rents that were payable to the widow and to which we will now refer.

As stated, the widow was given a life estate in five hundred sixty acres of farm land. The will expresses testator's wish and request that she appoint the executors her agents to lease the land, collect rents, pay taxes and make repairs. The court held Craft's services in connection with leasing the farms, collecting rents and other management thereof were for the widow's benefit and the estate was not chargeable therewith. We agree with this conclusion. This is the effect of our holding in In re Estate of Myers, supra, 234 Iowa 502, 511, 12 N. W. 2d 211, 215, 150 A. L. R. 254.

The original executors were allowed no compensation because of their mishandling of the estate. Mr. Percy, one of their attorneys, was allowed $300. Mr. Knox who served for about a year as one of Southwick's attorneys was paid $300. Mr. Craft was paid $820 and Mr. Southwick a like amount.

We have not attempted to place a value upon each item of service nor to classify each as either ordinary or extraordinary services. Nor do we think this is necessary under the circumstances here. See In re Estate of Seablom, 231 Iowa 608, 612, 613, 1 N. W. 2d 701, 703. We feel Mr. Craft should be allowed $1,000 in addition to the $820 heretofore received by him.

Mr. Craft also made claim for $262.23 for expenses incurred by him. The trial court allowed only $24.16 of this amount. We find insufficient basis for interfering with this allowance. Most of the expense items which appear to have been rejected are for automobile mileage. It is fairly to be inferred most of this automobile expense was in connection with the management of the farms which the estate should not bear.

Appellants assign as error the sustaining of appellees' objection to a question asked Mr. Craft as to whether all items listed in his account were necessary for the preservation and proper administration of the estate. The court ruled the witness' affirmative answer was an unallowable opinion and conclusion. Appellants suffered little if any prejudice from the ruling since Mr. Craft was permitted to testify all his services were requested by the administrator and benefited the estate.

But we are not prepared to hold the ruling was an abuse of discretion. It is true we have said the burden rests upon such a claimant, when met by objections, to prove his services were necessary for the protection of the estate. In re Estate of Munger, 168 Iowa 372, 377, 150 N. W. 447, 449, Ann. Cas. 1917B, 213; Glynn v. Cascade State Bank, 227 Iowa 932, 937, 289 N. W. 722. But it does not follow this may be done directly in the manner attempted here. The testimony was upon a question of law or a mixed question of law and fact upon which a witness should not be permitted to express his opinion directly. Such a matter is not the subject of expert testimony. This assignment of error is governed, on principle, by what we say in Grismore v. Consolidated Prod. Co., 232 Iowa 328, 361, 5 N. W. 2d 646, 663. See, also, 20 Am. Jur., Evidence, section 799.

Other assignments of error are either disposed of by what we have already said or need not be discussed.

For an order increasing by $1,000 the compensation allowed R. K. Craft this cause is—Reversed and remanded.

OLIVER, C. J., and BLISS, HALE, SMITH, MANTZ, and MULRONEY, JJ., concur.

HAYS, J., takes no part.