IN RE TRUST under will of AMANDA LARKINS.
CLARK TAYLOR, trustee-appellee; CECILE TIERNEY, objector-appellant.

No. 47994.

(Reported in 51 N.W. 2d 396)

FEBRUARY 5, 1952.

Bray, Carson & McCoy, of Oskaloosa, for appellant.

Gilbert & Scholz and James L. Devitt, all of Oskaloosa, for appellee.

MANTZ, J.—The controversy herein grows out of objections filed by Cecile Tierney to the second annual report of Clark Taylor, trustee of a trust created by the will of Amanda E. Larkins, deceased. Objector is a life-estate beneficiary of the income of such trust. The report and the objections thereto were

set down for hearing, following which the court approved said report and overruled the objections. Objector has appealed.

Two claimed errors have been presented to us by appellant: (1) That the fees allowed to the trustee and his attorneys were excessive. (2) That the court erred in failing to direct the trustee to distribute the net income to the life beneficiary, Cecile Tierney.

Before taking up such claimed errors we will briefly set forth sufficient of the facts as shown in the record to indicate the matters involved, as applied to the issues raised.

I.  Amanda E. Larkins, a widow, died testate, a resident of Mahaska County, Iowa, on March 15, 1949. Her will was executed in California and following some legal controversy was admitted to probate in Mahaska County. Her estate consisted of stocks, bonds, cash on hand and a farm of 236 acres in Mahaska County, all of an approximate value of a little over $59,000. After making a few various bequests, the residue of her estate was placed in trust for Cecile Tierney, a granddaughter, and following the death of Cecile, to Cecile's son, Joseph Tierney. The trustee and the executor appointed to act under the will resided in California and declined to qualify. After some negotiations and court proceedings in Iowa, her estate was opened in Mahaska County, Iowa, one E. L. Butler of Mahaska County was appointed administrator with the will annexed and Clark Taylor was appointed trustee. The estate was closed and the property remaining was turned over to the trustee. On April 9, 1951, said trustee filed his second annual report and to this report objections were filed by the trust beneficiary, Cecile Tierney, who, under the terms of the Larkins will was the legal life beneficiary of the net income of said estate. Her succeeding life beneficiary is her minor son, Joseph Tierney. He did not join in the objections filed.

Inasmuch as there is a controversy over the provisions of the Amanda Larkins will as to the rights, powers and duties of the trustee and those of the objector, Cecile Tierney, we will set out pertinent parts thereof:

"Said trustee is hereby vested with absolute discretion and power to determine what shall constitute the principal of the

trust estate or the gross income therefrom, or net income available for distribution under the terms of this trust; and it may also, at its discretion, improve any real property subject to this trust, build, alter or repair any improvements thereon, of such character, amount, cost, and from such funds or property subject to this trust as it may deem advisable. * * * The entire net income received or derived from the trust estate to be paid monthly by said trustee to my granddaughter, Cecile Tierney, for and during her natural life and upon her death to the son of my said granddaughter, Joseph Tierney, if he survive her, until he shall have arrived at the age of twenty-one (21) years, whereupon my entire estate so held in trust shall be forthwith delivered to and become the absolute property of the said Joseph Tierney * * *. The entire net income shall go and be paid monthly to my granddaughter, Cecile Tierney, for and during her life and upon and at the time of the demise of my said granddaughter, should her son, Joseph Tierney, be not living, this trust shall ipso facto cease and determine and the entire trust estate shall go and be by said trustee conveyed, transferred and delivered to my heirs-at-law pursuant to the laws of descent and distribution of the State of California."

A second paragraph of the Amanda Larkins will sets up a prohibition against any beneficiary having any right, power or authority to sell, transfer, pledge, mortgage, hypothecate, alienate, anticipate, or in any manner affect or impair his, her or their beneficial and legal rights, title, interest and estate in and to the income or principal of said trust. Said clause further provides that the net income shall be payable only, solely and exclusively and personally to the above beneficiaries at the time they are entitled to take the same under the terms of the trust.

An examination of the language above-quoted from the will of Mrs. Larkins makes it quite evident that she intended the trust created to be in the nature of a protective spendthrift trust. The language thereof can scarcely lead to any other conclusion.

The second annual report shows the receipts and disbursements made by the trustee to the beneficiary, Cecile Tierney; shows an itemized list of the services performed and of the various items and charges for services performed by the attor-

neys for the trustee. It likewise sets forth a detailed statement of all sums received by such trustee and the items of property on hand belonging to such trust estate. Said trustee asks that he be allowed $400 as his compensation for the year 1950 and a like sum for his attorneys, Gilbert & Scholz and James L. Devitt, alleging that in view of the services performed and the nature of the trust such claims are fair and reasonable. At the hearing the court made such allowances, and this allowance constituted the first error claimed by Cecile Tierney.

It is quite evident from the record that there had been controversy between Cecile Tierney and the trustee before she filed the objections passed upon, and an effort was made by the trustee and his attorneys to get matters adjusted in order that the estate could proceed to settlement and the trust set up. Much of the controversy involved the question as to who should administer the estate and who should act as trustee. Later, a controversy arose over demands of the beneficiary that she be paid a larger part of the income from the trust fund. The farm in the estate required attention as to rental, repairs and windstorm damage, and the trustee made various trips in attending to such matters. He had numerous conferences with Cecile, also with the attorney dealing with trust affairs. The itemized statement of the trustee covers close to one hundred separate items of service rendered. The trustee testified in person as to such items; likewise his attorneys testified in detail as to their itemized claims for services. We find no evidence to contradict such claims or to show that the amounts claimed were excessive or were unearned or fraudulent. The beneficiaries simply argued that the amounts claimed and allowed by the trial court were excessive. We have gone over the various items with care and are of the opinion that the trial court did not abuse its discretion in making the allowances. Much of the difficulty in handling the trust was the attitude and demeanor of the beneficiary, Cecile Tierney.

It is a rule of the Iowa cases that in the handling of estates and especially the allowances of fees to administrators, executors, trustees and attorneys the trial court is allowed a large discretion. In re Estate of Myers, 238 Iowa 1103, 29 N.W.2d

426; Booth v. Bradford, 114 Iowa 562, 87 N.W. 685; Turner v. Ryan, 223 Iowa 191, 272 N.W. 60, 110 A. L. R. 554.

In our recent holding in In re Estate of Myers, supra, we had for consideration the matter of allowance of attorney fees. In that case (page 1107 of 238 Iowa) we held that the trial court is vested with considerable discretion in the allowance of fees to an administrator and his attorneys, citing In re Estate of Hale, 231 Iowa 1018, 2 N.W.2d 775. See also In re Estate of Johnson, 229 Iowa 1002, 295 N.W. 878; Glynn v. Cascade State Bank, 227 Iowa 932, 289 N.W. 722; In re Estate of Wiggins, 230 Iowa 1087, 300 N.W. 289.

██ The last cited case held that the burden was upon the claimant to show the value of such services either as administrator or attorney. We hold, as did the trial court, that both the trustee and his attorneys fully met such burden. Complaint is made that the trustee was not justified in employing two firms of attorneys. Trustee admits that he had the two firms but claims that because of the nature of the services required such was proper; also, that but one fee for both firms was claimed or allowed.

In In re Estate of Leighton, 210 Iowa 913, 224 N.W. 543, we held that in the absence of fraud or improper motives such employment was proper, especially as it did not increase the fee charged to the trust. Such was the case here. We find no error as charged.

██ II. The second error heretofore set forth alleges that the court failed to order the trustees to make further and additional distribution of the net income to the beneficiary. In the beginning of the trust the first monthly payments to the beneficiary were $100. Later, and after the estate of Mrs. Larkins was closed, additional funds to be added to the trust estate came into the hands of the trustee. All payments were made pursuant to order of court. Pursuant to court order the payments for January and February 1951 were $125 per month. The trustee carried forward what he designated an "operating account" and this account at the end of the period covered by the second annual report was $2381.31. This would be reduced by the $800 fees for the trustee and his attorneys, and further by the payments to the beneficiary. Then there would be required current

expenses such as taxes, farm expenses, and it can readily be seen that to make the payments demanded by the beneficiary could readily deplete the trust fund. The farm income was largely from the corn crop and would not be available until after harvesting, which normally would be in October or November. This would all be subject to abnormal conditions such as drought, wet weather, hail or frost—hazards which sometimes utterly wipe out a growing crop.

There is another matter to be considered and that is the terms of the will creating the trust. A wide discretion is there vested in the trustee. The provisions of the will creating the trust cannot be otherwise construed. Note the provision which states that the trustee is "vested with absolute discretion and power to determine what shall constitute the principal of the trust estate or the gross income therefrom, or net income available for distribution." The will grants broad powers to the trustee as to management of the farm—construction and maintenance of buildings, investments of stocks and bonds. To comply with the demands of the beneficiary it might be necessary to resort to the corpus of the trust—something not contemplated by the testatrix. It must be kept in mind that Cecile Tierney had but a life estate to the income—her son, Joseph Tierney, has certain rights therein and to diminish the corpus of the trust would diminish his expectancy.

The trustee is simply withholding income for future charges or contingencies, which under the holdings of our and other courts he has a right to do, governed by the instrument by which the trust was created. 33 Am. Jur., Life Estates, Remainders, etc., section 290; annotation 125 A. L. R. 629.

In re Estate of Roberts, 240 Iowa 160, 35 N.W.2d 756, 54 Am. Jur., Trusts, section 181, and Restatement of the Law, Trusts, section 187, deal with the discretion of the trustee. In the citation 54 Am. Jur., section 181, it was stated: "The court * * * will not interfere with * * * the trustee's determination, in the absence of clear abuse * * *. It will not ordinarily substitute its discretion for that of the trustee, but upon a proper showing it may * * * interfere with such discretion * * * where the trustee has acted unreasonably or arbitrarily or from improper motives * * *"

In the instant case we find nothing in the record to indicate that the trustee acted unreasonably, arbitrarily or from improper motives. He was simply exercising his discretion as to making distribution to the beneficiary. He might properly take into consideration the hazards, uncertainties and contingencies of the future which might deplete and wipe out any net income from the trust estate.

We hold, as did the trial court, that the trustee did not abuse his discretion in failing to distribute from the net income on hand as demanded by the beneficiary.

Finding no error, we affirm.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.